Richard J. GMEREK and Charles I. Artz, Petitioners,

v.

STATE ETHICS COMMISSION and Honorable Mike Fisher, Attorney General, Respondents.

Commonwealth Court of Pennsylvania.

Argued Oct. 6, 1999.
Decided May 18, 2000.

John H. Estey, Philadelphia, for petitioners.

Robin M. Hittie, Harrisburg, for respondent, State Ethics Com'n.

John P. Krill, Jr., Harrisburg, for intervenor, Mark R. Corrigan.

Before DOYLE, President Judge, and COLINS, J., McGINLEY, J., SMITH, J., KELLEY, J., FLAHERTY, J. and LEADBETTER, J.

KELLEY, Judge.

Presently before this Court for disposition are the cross-motions for summary judgment filed by Richard J. Gmerek and Charles I. Artz (Petitioners), the State Ethics Commission (Respondent Commission), and the Honorable Mike Fisher, At-

torney General (Respondent Attorney General), and the petition for judgment on the pleadings filed by Mark R. Corrigan, Secretary of the Pennsylvania Senate (Intervenor) to the petition for review in the nature of a complaint for declaratory judgment filed in our original jurisdiction by Petitioners.[1]

On October 15, 1998, Governor Ridge signed the Lobbying Disclosure Act, 65 Pa.C.S. §§ 1303 – 1311(Act), into law. The Act was to take effect on August 1, 1999 and its relevant provisions may be summarized as follows. Section 1302 of the Act[2] sets forth the intent of the General Assembly in its enactment, and the jurisdiction of the General Assembly and the Executive Department of the Commonwealth to regulate persons engaged in lobbying activities as defined in the Act. Section 1303 of the Act[3] sets forth definitions of the per-

1. On July 22, 1999, the Secretary of the Senate filed a petition for leave to intervene in this matter. By order of court dated August 17, 1999, this Court granted the Secretary's petition and directed the Secretary to file the instant motion for judgment on the pleadings.

2. Section 1302 of the Act states:

(a) **Intent.**—The Constitution of Pennsylvania recognizes the principle that all free government is founded upon the authority of the people. It further provides that the power to make law in this Commonwealth is vested in the General Assembly and the power to enforce law is vested in the Executive Department. The ability of the people to exercise their fundamental authority and to have confidence in the integrity of the process by which laws are made and enforced in this Commonwealth demands that the identity and the scope of activity of those employed to influence the actions of the General Assembly and the Executive Department be publicly and regularly disclosed.

(b) **Jurisdiction.**—The authority to regulate persons employed to influence the actions of the General Assembly and the Executive Department lies within the jurisdiction of those branches of government. To insure that the intent of this chapter is not evaded and that all such persons are regulated in a fair and equitable manner, lobbyists and the practice of lobbying shall be subject to this chapter, which shall prevail over any other regulation of professional activity when that activity constitutes lobbying. This chapter is not intended to govern professional activities which do not include lobbying and which are properly the subject of regulation by the judicial branch of government or by any government agency. Membership in a regulated profession shall not excuse a lobbyist from compliance with the provisions of this .chapter. 65 Pa.C.S. § 1302.

3. Section 1303 of the Act states, in pertinent part:

"Administrative action." Any of the following:
(1) An agency's:
 (i) proposal, consideration, promulgation or rescission of a regulation;
 (ii) development, or modification of a guideline or a statement of policy; or
 (iii) approval or rejection of a regulation.
(2) The review, revision, approval or disapproval of a regulation under the act of June 25, 1982 (P.L. 633, No. 181), known as the Regulatory Review Act.
(3) The Governor's approval or veto of legislation.
(4) The nomination or appointment of an individual as an officer or employee of the Commonwealth.
(5) The proposal, consideration, promulgation or recision of an executive order.
 * * *

"Direct communication." An effort, whether written, oral or by any other medium made by a lobbyist or principal, directed to a state official or employee, the purpose or foreseeable effect of which is to influence legislative action or administrative action.
 * * *

"Indirect communication." An effort, whether written, oral or by any other medium, to encourage others, including the general public, to take action, the purpose or foreseeable effect of which is to directly influence legislative action or administrative action. The term includes letter-writing campaigns, mailings, telephone banks, print and·electronic media advertising, billboards, publications and educational campaigns on public issues...
 * * *

"Legislative action." An action taken by a State official or employee involving the preparation, research, drafting, introduction, consideration, modification, amendment, approval, passage, enactment, tabling, postponement, defeat or rejection of legislation; legislative motions; overriding or sustaining a veto by the Governor; or confirmation of appointments by the Governor or of appointments to public boards or

sons and activities governed by its provisions. Section 1304 of the Act[4] requires

commissions by a member of the General Assembly.

\* \* \*

"Lobbying." An effort to influence legislative action or administrative action. The term includes:

(1) providing any gift, entertainment, meal, transportation or lodging to a State official or employee for the purpose of advancing the interest of the lobbyist or principal; and

(2) direct or indirect communication.

"Lobbyist." Any individual, firm, association, corporation, partnership, business trust or business entity that engages in lobbying on behalf of a principal for economic consideration.

The term includes an attorney who engages in lobbying.

"Principal." Any individual, firm, association, corporation, partnership, business trust or business entity:

(1) on whose behalf a lobbyist influences or attempts to influence an administrative action or a legislative action; or

(2) that engages in lobbying on the principal's own behalf.

\* \* \*

"State official or employee." An individual elected or appointed to a position in State Government, whether compensated or uncompensated, who is involved in legislative action or administrative action.

65 Pa.C.S. § 1303.

4. Section 1304 of the Act states, in pertinent part:

(a) **General rule.**—Unless excluded under Section 1306 (relating to exemption from registration and reporting), a lobbyist or a principal must register with the commission within ten days of acting in any capacity as a lobbyist or principal. Registration shall be biennial and be coincident with the terms of the members of the House of Representatives.

(b) **Principals.**—

(1) A principal required to register shall file the following information with the commission:

(i) Name.

(ii) Permanent address.

(iii) Daytime telephone number.

(iv) Name and nature of business.

(v) Name, registration number and acronyms of affiliated political action committees.

(vi) Name and permanent business address of each individual who will for economic consideration engage in lobbying on the principal's behalf.

the registration of both lobbyists and principals. Section 1305 of the Act[5] sets forth

(2) If an organization or association is a principal, the number of dues-paying members in the past calendar year shall also be disclosed.

(c) **Lobbyist.**—

(1) A lobbyist who is required to register shall file the following information with the commission:

(i) Name.

(ii) Permanent business address.

(iii) Daytime telephone number.

(iv) A recent picture of the lobbyist.

(v) Name, permanent business address and daytime telephone number of the principal the lobbyist represents.

(vi) Name, registration number and acronyms of affiliated political action committees.

(2) Each lobbyist shall file a separate registration statement for each principal...

65 Pa.C.S § 1304(a), (b), (c).

In turn, Section 1306 of the Act provides, in pertinent part:

The following individuals and activities shall be exempt from registration under Section 1304 (relating to registration) and reporting under Section 1305 (relating to reporting):

(1) An individual who limits lobbying activities to preparing testimony and testifying before a committee of the legislature or participating in an administrative proceeding of an agency...

65 Pa.C.S. § 1306(1).

5. Section 1305 of the Act provides, in pertinent part:

(a) **General rule.**—A lobbyist as required by subsection (b)(6) or a registered principal shall, under oath or affirmation, file quarterly expense reports with the commission.

(b) **Content.**—

(1) Reports must list the names of all lobbyists by whom the lobbying is conducted and the general subject matter or issue being lobbied.

(2) Expense reports must contain the following categories:

(i) A single aggregate good faith estimate of the total amount spent for personnel and office expenses related to lobbying...

(ii) A single aggregate good faith estimate of the total amount spent for direct communication.

(iii) The total costs for gifts, entertainment, meals, transportation, lodging and receptions, given to or provided to State officials or employees or their immediate families.

reporting requirements for lobbyists. Section 1307 of the Act[6] outlines certain prohibitions relating to those engaged in lobbying. Section 1308 of the Act[7] vests the administration and enforcement of the Act in Respondent Commission and Respondent Attorney General. Section 1309 of the Act[8] sets forth both civil and criminal

(iv) A single aggregate good faith estimate of the total amount spent for indirect communication.

(3) In addition to reporting the totals required under this subsection, the expense report must identify, by name, position and each occurrence, a State official or employee who receives from a principal or lobbyist anything of value which must be included in the statement under Section 1105(b)(6) or (7) [of the Public Official and Employee Ethics Act (Ethics Act), 65 Pa.C.S. § 1105(b)(6) or (7),] (relating to statement of financial interests) as implemented by Section 1105(d) [of the Ethics Act]...

\* \* \*

(c) **Records retention.**—A registrant shall retain all documents reasonably necessary to substantiate the reports to be made under this Section for four years from the date of filing the subject report. Upon request by the Office of the Attorney General or the commission, these materials shall be made available for inspection within a reasonable period of time...

65 Pa.C.S. § 1305(a), (b), (c).

6. Section 1307 of the Act provides, in pertinent part:

(a) **Contingent compensation.**—

(1) No one may compensate or incur an obligation to compensate any lobbyist, principal or individual to engage in lobbying for compensation contingent in whole or in part upon any of the following:

(i) Passage or defeat, or approval or veto, of legislation.

(ii) Occurrence or nonoccurrence of administrative action.

(2) No lobbyist, principal or individual may engage or agree to engage in lobbying for compensation contingent in whole or in part upon any of the following:

(i) Passage or defeat, or approval or veto, of legislation.

(ii) Occurrence or nonoccurrence of an administrative action.

(b) **Political committees.**—A lobbyist may not serve as a treasurer or another officer for a candidate's political committee or a candidate's political action committee...

65 Pa.C.S. § 1307(a), (b).

7. Section 1308 of the Act provides, in pertinent part:

(a) **Criminal enforcement.**—If the commission believes an intentional violation of this chapter has been committed, it shall refer all relevant documents and other information to the Office of the Attorney General.

(b) **Attorney General.**—In addition to the authority conferred upon the Attorney General under the act of October 15, 1980 (P.L. 950, No. 164), known as the Commonwealth Attorneys Act, the Attorney General has the authority to investigate and prosecute a violation of this chapter.

(c) **Advice and opinions.**—The commission shall provide advice and opinions in accordance with procedures set forth in Section 1107 (relating to powers and duties of commission) to a lobbyist, principal or State official or employee who has a question regarding compliance with this chapter...

(d) **Public inspection and copying.**—The commission shall make completed registration statements, expense reports, termination notices and termination reports, which have been filed with the commission, available for public inspection and provide copies of these documents...

\* \* \*

(f) **Retention of records.**—Completed registration statements, expense reports, termination notices and termination reports shall remain on file with the commission for a four-year period.

\* \* \*

(h) **Investigation and hearings.**—The commission, through its executive director, may initiate an investigation and hold a hearing, concerning negligent conduct by a lobbyist or principal, in accordance with Sections 1107 and 1108 (relating to investigations by commission.)...

65 Pa.C.S. § 1308(a)—(d), (f), (h).

8. Section 1309 of the Act provides, in pertinent part:

(a) **Notice of noncompliance.**—The commission shall issue a notice of noncompliance to any lobbyist, principal or individual that has failed to register or report as required by this chapter. The notice shall state the nature of the of the alleged noncompliance and the civil and criminal penalties for failure to register, failure to file or filing a report containing a false statement. The notice shall also advise of the right to a hearing before the commission and the time and manner in which to request a hearing.

(b) **Hearing.**—If a hearing is requested, the commission shall determine at the hearing whether the recipient of the notice is re-

penalties that may be imposed for noncompliance with its provisions. Section 1310 of the Act [9] requires the payment of a biennial fee of $100.00 to Respondent Commission by those compelled to register as lobbyists or principals under its provisions. Finally, Section 1311 of the Act [10] contains a unique severability clause which states that if a provision of the Act is held invalid as an improper regulation of the "practice of law", the remaining provisions of the Act are void.

quired to register or report under the chapter, whether the failure to register or report was negligent and, if the failure was negligent, the amount of the civil penalty to be imposed. If the commission finds that the failure to register or report was intentional, it shall refer the matter to the Attorney General for investigation and prosecution...

**(c) Negligent failure to register or report.**—Negligent failure to register or report as required by this chapter is punishable by a civil penalty not exceeding $50 for each late day. After a hearing under subsection (b), in the case of negligent failure to register or report, the commission may, upon the majority vote of its members, levy a civil penalty as provided for in this subsection. The total amount of the civil penalty levied shall not be limited by any other provision of law...

\* \* \*

**(e) Intentional violations.**—
(1) Any lobbyist, principal or individual that intentionally fails to register or report as required by this chapter commits a misdemeanor of the second degree.
(2) A registrant that files a report under this chapter with knowledge that the report contains a false statement commits a misdemeanor of the second degree.
(3) Except as set forth in paragraph (1) or (2), any lobbyist, principal or individual that intentionally violates this chapter commits a misdemeanor of the third degree.
(4) In addition to the criminal penalties imposed by this subsection, the commission may prohibit a lobbyist or principal from lobbying for up to five years for doing an act which constitutes an offense under this subsection. No criminal prosecution or conviction shall be required for the imposition of the prohibition authorized by this paragraph...
65 Pa.C.S. § 1309(a), (b), (c), (e).

9. Section 1310 of the Act states, in pertinent part:

On May 26, 1999, Petitioners filed the instant petition for review seeking declaratory relief. In the petition, Petitioners allege that they are members of the Pennsylvania bar who on behalf of their clients engage in "lobbying", as that term is defined in the Act. Petitioners also allege that because the Act purports to regulate the "practice of law" with respect to these activities, it violates Article 5, Section 10 of the Pennsylvania Constitution [11] which vests all authority over the regulation of

**(a) Filing fees.**—A principal or lobbyist required to be registered under this chapter shall pay a biennial fee of $100 to the commission...
65 Pa.C.S. § 1310(a).
Section 1310 of the Act also authorizes the promulgation of regulations relating to its provisions stating, in pertinent part:
**(c) Regulations.**—A committee comprised of the Secretary of the Senate, the Chief Clerk of the House of Representatives, the chairman of the State Ethics Commission, the Attorney General, the Secretary of the Commonwealth, the Auditor General and the General Counsel or their designees, shall have continuing authority to promulgate regulations necessary to carry out this chapter...
65 Pa.C.S. § 1310(c). These regulations may be found at 51 Pa.Code §§ 31.1 – 45.2.

10. Section 1311 of the Act states:

**(a) General rule.**—Except as provided in subsection (b):
(1) The provisions of this chapter are severable.
(2) If any provision of this chapter or its application to any person or circumstance is held invalid, the invalidity shall not affect other provisions or applications of this chapter which can be given effect without the invalid provision or application.
**(b) Practice of law.**—If any provision of this chapter or its application to any person or circumstance is held invalid on the basis of improper regulation of the practice of law, the remaining provisions or applications of this chapter are void.
65 Pa.C.S. § 1311.

11. Article 5, Section 10 of the Pennsylvania Constitution provides, in pertinent part:

(c) The Supreme Court shall have the power to prescribe general rules ... for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution

the "practice of law" with the Pennsylvania Supreme Court. In particular, Petitioners allege that the Act impermissibly regulates the "practice of law" in the following respects:

(1) the reporting requirements of Section 1305(c) of the Act, relating to the retention and disclosure of records, could require Petitioners to disclose their clients' proprietary and confidential information in violation of Rule 1.6 of the Rules of Professional Conduct[12] and the statutory attorney-client privilege contained in Section 5928 of the Judicial Code, 42 Pa.C.S. § 5928;[13]

(2) the prohibition of contingent compensation in Section 1307(a) of the Act directly contravenes Rule 1.5(c) of the Rules of Professional Conduct;[14]

(3) the provisions of Section 1309 of the Act granting Respondent Commission and Respondent Attorney General the authority to impose sanctions for noncompliance conflicts with the Pennsylvania Supreme Court's authority to discipline attorneys;

(4) the payment of a biennial fee as required by Section 1310 of the Act could bar Petitioners from practicing law as a lobbyist and thereby conflict with the Pennsylvania Supreme Court's authority to regulate the practice of law; and

(5) the provision of Section 1307(b) prohibiting lobbyists from serving as officers in a political candidate's committee or political action committee is a restric-

---

and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.

PA. CONST. art. V, § 10(c).

**12.** Rule 1.6 of the Rules of Professional Conduct states:

### RULE 1.6 CONFIDENTIALITY OF INFORMATION

(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraphs (b) and (c).

(b) A lawyer shall reveal such information if necessary to comply with the duties stated in Rule 3.3.

(c) A lawyer may reveal such information to the extent that the lawyer reasonably believes necessary:

(1) to prevent the client from committing a criminal act that the lawyer believes is likely to result in death or substantial bodily harm or substantial injury to the financial interests or property of another;

(2) to prevent or to rectify the consequences of a client's criminal or fraudulent act in the commission of which the lawyer's services are being or had been used; or

(3) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim or disciplinary proceeding against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client.

(d) The duty not to reveal information relating to representation of a client continues after the client-lawyer relationship has terminated.

**13.** Section 5928 of the Judicial Code states:

In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa.C.S. § 5928.

**14.** Rule 1.5 of the Rules of Professional Conduct states, in pertinent part:

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law...

(d) A lawyer shall not enter into an arrangement for, charge, or collect:

(1) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony support; or

(2) A contingent fee for representing a defendant in a criminal case...

tion beyond those imposed on attorneys by the Pennsylvania Supreme Court.

Based on the foregoing, Petitioners ask this Court to declare that the Act improperly regulates the "practice of law", declare the Act void pursuant to the provisions of Section 1311(b) of the Act, and grant such further relief as may be just under the circumstances.[15]

On June 25, 1999, Respondent Commission and Respondent Attorney General each filed an answer and new matter to the petition for review in which they allege, *inter alia,* that: the provisions of the Act do not impermissibly regulate the practice of law; the Act does not infringe upon the Supreme Court's authority to prescribe general rules for admission to the bar and to practice law under Article 5, Section 10 of the Pennsylvania Constitution; and Petitioners have failed to state a cause of action upon which relief may be granted.[16] On July 8, 1999, Petitioners filed an answer to the new matter raised by Respondents.

On July 26, 1999, Respondent Commission filed a motion for summary judgment in which it alleges, *inter alia,* that: there are no material issues of fact; the Act regulates lobbying which is not the "practice of law"; and it is entitled to judgment in its favor as a matter of law.

On August 2, 1999, Petitioners filed a motion for summary judgment in which they allege that the provisions of the Act impermissibly intrude upon the Pennsylvania Supreme Court's authority to regulate the "practice of law" pursuant to Article 5, Section 10 of the Pennsylvania Constitu-

tion in that: Section 1302(b) of the Act specifically provides that the Act's regulation of lobbying activities, as defined in the Act, "shall prevail over any regulation of professional activity when that activity constitutes lobbying"; the prohibition against contingent compensation contained in Section 1307(a) of the Act directly contravenes Rule 1.5(c) of the Rules of Professional Conduct; the required retention and disclosure of records contained in Section 1305(c) of the Act could require the disclosure of confidential information in violation of Rule 1.6 of the Rules of Professional Conduct; and the provisions of Section 1309 of the Act which authorizes the imposition of sanctions directly conflicts with the Supreme Court's exclusive authority to discipline attorneys and regulate the practice of law. Based on the provisions of Section 1311(b) of the Act, Petitioners alleged that the Act must be declared void.

On August 11, 1999, Respondent Attorney General filed a motion for summary judgment in which he alleges, *inter alia,* that: there is no genuine issue of material fact; the Act does not impermissibly regulate the practice of law nor does it infringe upon the Supreme Court's exclusive authority to prescribe rules governing the practice of law; and he is entitled to judgment as a matter of law.

On August 18, 1999, Intervenor filed a motion for judgment on the pleadings in which he alleges, *inter alia,* that: there are no issues of material fact; and the Act does not impermissibly regulate the "practice of law" as it regulates the activities of lobbyists and not lawyers.

---

**15.** On May 26, 1999, Petitioners also filed an application for special relief in the nature of a preliminary injunction in which they sought to enjoin the implementation and enforcement of the Act prior to its effective date of August 1, 1999. After a hearing, on July 13, 1999, this Court issued an order and opinion denying Petitioners' application.

**16.** That same day, Senator Robert C. Jubelirer, Senator F. Joseph Loeper and Senator Charles D. Lemmond, Jr. filed a petition for leave to intervene in this matter. This peti-

tion was also addressed at the hearing on Petitioners' application for special relief, and was denied in the order and opinion issued on July 13, 1999. However, the order and opinion permitted the Senators to participate in this matter as *amici curiae.* In addition, pursuant to Pa.R.A.P. 531, Senator Robert J. Mellow, Senator Allen J. Kukovich and Common Cause of Pennsylvania have filed briefs as *amici curiae* in support of Respondents' motions for summary judgment and Intervenor's motion for judgment on the pleadings.

In sum, in the instant action Petitioners ask this Court to declare the provisions of the Act void because these provisions violate Article 5, Section 10 of the Pennsylvania Constitution by impermissibly infringing upon the Pennsylvania Supreme Court's exclusive authority to regulate the "practice of law" in this Commonwealth. As the parties agree that there are no material facts in dispute, this is the sole legal issue to be determined in disposing of the cross-motions for summary judgment filed by Petitioners, Respondent Commission and Respondent Attorney General, and the petition for judgment on the pleadings filed by Intervenor.[17]

■ We initially note that the provisions of the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531–7541, govern petitions for declaratory judgments. *Ronald H. Clark, Inc. v. Township of Hamilton,* 128 Pa.Cmwlth. 31, 562 A.2d 965 (1989). Declaratory judgments are not obtainable as a matter of right. *Id.* Rather, whether a court should exercise jurisdiction over a declaratory judgment proceeding is a matter of sound judicial discretion. *Id.* Thus, the granting of a petition for a declaratory judgment is a matter lying within the sound discretion of a court of original jurisdiction. *Gulnac v. South Butler County School District,* 526 Pa. 483, 587 A.2d 699 (1991); *Ruszin v. Department of Labor and Industry,* 675 A.2d 366 (Pa.Cmwlth. 1996).

■ Section 7533 of the Declaratory Judgments Act provides, in pertinent part, that "[a]ny person ... whose rights, sta-

tus, or other legal relations are affected by a statute ... may have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status, or other legal relations thereunder." 42 Pa.C.S. § 7533. Under Section 7533, constitutional challenges to a statute's validity, such as that raised in the instant matter, may be decided by declaratory judgment. *Parker v. Department of Labor and Industry,* 115 Pa.Cmwlth. 93, 540 A.2d 313 (1988), *aff'd,* 521 Pa. 531, 557 A.2d 1061 (1989).

■ In addition, as the Pennsylvania Supreme Court has noted:

["]There is a presumption that lawfully enacted legislation is constitutional. Should the constitutionality of legislation be challenged, the challenger must meet the burden of rebutting the presumption of constitutionality by a clear, palpable and plain demonstration that the statute violates a constitutional provision."

The presumption in favor of the constitutionality of a statute reflects on the judiciary's respect for the legislature as a co-equal branch of government...

*Commonwealth v. Stern,* 549 Pa. 505, 512, 701 A.2d 568, 571–572 (1997) (citations omitted). However, "[t]he presumption of constitutionality must give way when there is any encroachment upon the judicial power by the legislature. Indeed, 'it is the duty of the courts to invalidate legislative action repugnant to the constitution.'" *Id.* *See also L.J.S.,* 744 A.2d at 798 ("The Constitution of Pennsylvania establishes

17. A motion for summary judgment may be properly granted only in those cases where the record clearly shows that there exists no outstanding issues of material fact and the moving party is entitled to judgment as a matter of law. *L.J.S. v. State Ethics Commission,* 744 A.2d 798 (Pa.Cmwlth.2000). In disposing of a motion for summary judgment, the record must be viewed in a light most favorable to the opposing party, and all doubts as to the existence of a material fact must be resolved in favor of the nonmoving party. *Id.* Thus, a motion for summary judgment requires a determination whether there

exists a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Id.* Likewise, a motion for judgment on the pleadings may summarily dispose of a case when there exists no genuine issue of fact and the moving party is entitled to judgment as a matter of law. *Casner v. American Federation of State, County and Municipal Employees,* 658 A.2d 865 (Pa. Cmwlth.1995). With these standards in mind, we consider the instant cross-motions for summary judgment and the motion for judgment on the pleadings.

three separate, equal and independent branches of government: the General Assembly, the Executive and the Judiciary. Each branch is clothed with certain exclusive rights and powers. Neither the General Assembly nor the executive branch of government, acting through an administrative agency may constitutionally infringe upon the powers or duties of the ... judiciary.").

As noted above, Article 5, Section 10(c) of the Pennsylvania Constitution provides, in pertinent part, "[t]he Supreme Court shall have the power to prescribe general rules governing ... admission to the bar and to practice law, ... and supervision of all officers of the judicial branch... All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions." PA. CONST. art. V, § 10(c). The courts of this Commonwealth have long recognized the judicial authority to regulate the conduct of lawyers as members of the Pennsylvania Bar. Indeed, as the Pennsylvania Supreme Court has stated:

> "A basic precept of our form of government is that the executive, the legislature and the judiciary are independent, co-equal branches of government." *Beckert v. Warren*, 497 Pa. 137, 144, 439 A.2d 638, 642 (1981) (citations omitted).

"Under the principle of separation of powers of government, ... no branch should exercise the functions exclusively committed to another branch." *Sweeney v. Tucker*, 473 Pa. 493, 508, 375 A.2d 698, 706 (1977) (citations omitted). As the ultimate interpreter of the Pennsylvania Constitution, this Court bears the responsibility of determining whether a matter has been exclusively committed to one branch of the government. *Id.*, 473 Pa. at 510, 375 A.2d at 706.

The inherent and exclusive authority of the Supreme Court over members of the legal profession was recognized in *In re Splane*, 123 Pa. 527, 16 A. 481 (1889), which held that the admission of an attorney to practice before a court is a judicial act. "If there is anything in the constitution that is clear beyond controversy, it is that the legislature does not possess judicial powers." 123 Pa. at 539, 16 A. at 483. Judicial powers are to be exercised by the judiciary alone and any encroachment upon the judiciary "must be regarded as a vain attempt by the legislature to exercise a power which it does not possess." *Hoopes v. Bradshaw*, 231 Pa. 485, 487, 80 A. 1098, 1099 (1911).

*Stern*, 549 Pa. at 509–510, 701 A.2d at 570.[18]

18. *See also In re Shigon*, 462 Pa. 1, 10, 329 A.2d 235, 239 (1974) ("[A]ppellants do not dispute the power of a court to disbar, suspend or otherwise appropriately discipline a member of its bar. *In re Schofield*, 362 Pa. 201, 204, 66 A.2d 675 (1949). As we noted in that case, the power has been exercised in the United States and England from the earliest times. *Ibid.* n. 1."); *Splane*, 123 Pa. at 540, 16 A. at 483 ("[T]he profession of the law is one of the highest and noblest in the world. The relation between attorney and client is a very close one and often involves matters of great delicacy. The attorney is an officer of the court, and is brought into close and intimate relations with the court. Whether he shall be admitted, or whether he shall be disbarred, is a judicial and not a legislative question."); *In re Davies*, 93 Pa. 116, 120, 1880 WL 13280 (1880) ("[T]he power of a court to admit as an attorney to its bar, a person possessing the requisite qualifications, and to remove him therefrom when found unworthy, has been recognized for ages and cannot now be questioned. In fact the power of removal for just cause is as necessary as that of admission for a due administration of law. By admitting him the court presents him to the public as worthy of its confidence in all his professional duties and relations. If afterwards it comes to the knowledge of the court that he has become unworthy it is its duty to withdraw that endorsement, and thereby cease to hold him out to the public as worthy of professional employment."); Pa. R.D.E. 103 ("The Supreme Court declares that it has inherent and exclusive power to supervise the conduct of attorneys who are its officers (which power is reasserted in Section 10(c) of Article V of the Constitution of Pennsylvania) and in furtherance thereof promulgates these rules.").

Respondents, Intervenor and *Amici Curiae* argue that even though Article 5, Section 10 of the Pennsylvania Constitution vests all judicial powers in the Pennsylvania Supreme Court, the Pennsylvania General Assembly may constitutionally regulate the professional activities of lawyers if the statute is not specifically directed solely at the conduct of lawyers but governs the conduct of both lawyers and nonlawyers. In support of this contention, the parties cite to the opinions of the Pennsylvania Supreme Court in *P.J.S. v. Pennsylvania State Ethics Commission,* 555 Pa. 149, 723 A.2d 174 (1999) and *Maunus v. State Ethics Commission,* 518 Pa. 592, 544 A.2d 1324 (1988).

In *Maunus,* the State Ethics Commission advised lawyers who were employed by the Pennsylvania Liquor Control Board that they were required to file a Statement of Financial Interest under the provisions of the Ethics Act. The lawyers refused to comply with the disclosure, arguing that they were exempt from the Ethics Act's requirements because their ethical conduct was governed solely by the Pennsylvania Supreme Court. After a hearing, the State Ethics Commission issued an opinion in which it concluded that the lawyers were not exempt from the financial reporting and disclosure provisions of the Ethics Act. On appeal, this Court reversed the Commission's decision, holding that the

legislative imposition of the reporting and disclosure requirements violated Article 5, Section 10 of the Pennsylvania Constitution. Our decision was reversed on appeal to the Pennsylvania Supreme Court.

In concluding that the statute requiring the financial reporting and disclosure was not constitutionally infirm, the Court stated the following, in pertinent part:

[A]s members of the bar of the Pennsylvania Supreme Court, *all* attorneys admitted to practice in this Commonwealth, regardless of their employer, are uniformly obligated to meet and maintain certain professional and ethical standards promulgated by this Court ... [W]hat is contemplated by the exclusivity provision of Pa.R.D.E. 103 is that this Court is the only governmental body entitled to regulate and discipline the professional class of attorneys. No other component of our state government may impose duties applicable to every attorney admitted to practice in the Commonwealth, nor may another Commonwealth entity admit to practice or discipline an attorney. These prerogatives are within this Court's exclusive jurisdiction. However, notwithstanding our substantial authority in this area, it is ludicrous to suggest that employers are constitutionally precluded from imposing ethical and professional require-

The ancient origin of the judicial regulation of lawyers was outlined by the Minnesota Supreme Court as follows:

[T]he purpose for which lawyers are licensed as the exclusive occupants of their field ...is to protect the public from the intolerable evils which are brought upon people by those who assume to practice law without having the proper qualifications. The need for public protection is not of new origin. As early as 1292, the problem was recognized when Edward I, by royal ordinance, limited the number of attorneys and directed his justices 'to provide for every county a sufficient number of attornies and apprentices from among the best, the most lawful and the most teachable, so That King and people might be well served.' The limitation and selection of lawyers, without strict regulation, proved inadequate.

'* * * The evil finally became so great that in the year 1402 Parliament this time took cognizance of it and enacted the now famous statute, 4 Henry IV, Ch. 18, which provided that all attorneys should be examined by the justices, and in their discretion, only those found to be good and virtuous, and of good fame, learned and sworn to do their duty, be allowed to be put upon the roll and all others put out.' These early English statutes illustrate that a licensed bar subject to the supervision of the courts originated with a public demand for the exclusion of those who assumed to practice without being qualified therefor.

*Gardner v. Conway,* 234 Minn. 468, 477–479, 48 N.W.2d 788, 794–795 (1951) (citations and footnote omitted).

ments on their employees, some or all of whom may be attorneys. This is equally true where the employer is the Commonwealth or one of its subdivisions.

Employers in the private sector may properly adopt professional and ethical standards and in pursuit thereof, may require certain conduct of its employees, including attorneys, without running afoul of this Court's supervisory authority over the bar of this Commonwealth. Any intrusion upon the power of this Court to prescribe general rules governing the practice, procedure and conduct of judicial proceedings is viewed with the greatest of skepticism. However, a lawyer who contracts his or her services to an employer is like any other employee subject to the terms and rules of that employment, provided that they are in no way inimical to the ethical standards prescribed by this Court. For example, in order to avoid the appearance of impropriety, a law firm specializing in securities law may find it prudent to require its employees, including the attorneys on its staff, to disclose their personal securities holdings on a periodic basis. Likewise, public employers may find it appropriate to prohibit certain conduct or to eliminate conflicts of interest or such an appearance by requiring government employees to provide a financial disclosure statement on an annual basis... Even though instant appellees are government employees, they are nonetheless subject to the reasonable regulation of their governmental employer as long as it does not conflict with the authority of this Court.

*Maunus*, 518 Pa. at 596–98, 544 A.2d at 1326–27 (citation omitted and emphasis in original).

In *P.J.S.*, the State Ethics Commission initiated an investigation into the conduct of a lawyer who was employed as a solicitor for the City of Erie and maintained a private practice. The investigation focused on purported violations of the conflict of interest provisions of the Ethics Act. The lawyer filed a petition in this Court to prevent the investigation or any further action by the Commission. He argued that the investigation was barred because it related to actions he undertook through his private law practice and the investigation of these actions lies solely with the jurisdiction of the Pennsylvania Supreme Court pursuant to Article 5, Section 10 of the Pennsylvania Constitution. This Court disagreed and dismissed the lawyer's petition for review. Our decision was affirmed on appeal to the Pennsylvania Supreme Court.

In concluding that the Commission's investigation was not barred by Article 5, Section 10, the Supreme Court stated the following, in pertinent part:

[A]ppellant reasons that because the investigation looked to actions he undertook through his private law practice, which actions are encompassed by the Rules of Professional Conduct regarding conflicts of interest, any investigation of his alleged misconduct lies solely with the exclusive jurisdiction of this court.

Appellant's argument is mistaken. Appellant attempts to use his status as a member of the Bar of Pennsylvania as a shield protecting him from investigation by the Ethics Commission. Although members of the Bar of Pennsylvania are uniformly subject to the professional and ethical standards imposed and regulated by this court, they are not, by virtue of that membership exempt from all other professional and ethical regulations...

Contrary to appellant's assertion, the fact that the conduct proscribed by the conflict of interest provisions of the Ethics Act is similar to that proscribed by the Rules of Professional Conduct, does not mean that the Commission's investigation is barred. Appellant is not exempt from the jurisdiction of the Commission by virtue of his status as an attorney. The jurisdiction of this court is exclusive in the sense that it applies equally to all members of the Bar of

Pennsylvania. The exclusive jurisdiction of this court is infringed when another branch of government attempts to regulate the conduct of attorneys merely because of their status as attorneys. However, the jurisdiction of this court is not infringed when a regulation aimed at conduct is applied to all persons, and some of those persons happen to be attorneys...

To hold, as appellant suggests, that the mere status of "attorney" exempts one from meeting the necessary professional regulations which flow from whatever position one holds in addition to that of "attorney" is absurd. Clearly appellant's status as an attorney does not bar the Commission from investigating allegations that appellant engaged in conduct proscribed by the Ethics Act. The investigation of appellant by the Commission does not infringe upon this court's exclusive jurisdiction to regulate the ethical and professional conduct of attorneys admitted to the practice of law in this Commonwealth.

*P.J.S.,* 555 Pa. at 156–158, 723 A.2d at 177–178 (footnote and citations omitted).

Recently, we have had the opportunity to consider the Supreme Court's opinions in *P.J.S.* and *Maunus* in the case of *Shaulis v. Pennsylvania State Ethics Commission,* 739 A.2d 1091 (Pa.Cmwlth.1999). In *Shaulis,* a lawyer retired from her position with the Pennsylvania Department of Revenue. Prior to her retirement, she asked the State Ethics Commission for its opinion regarding what professional activities may be prohibited under the provisions of the Ethics Act. Ultimately, the State Ethics Commission issued an opinion in which determined, *inter alia,* that *P.J.S.* stood for the proposition that legislation is not constitutionally infirm under Article 5, Section 10 as long as it is not addressed to the specific regulation of the conduct of lawyers but, rather, regulates the conduct of a group which happens to include lawyers.

In considering the Supreme Court's opinions in both *P.J.S.* and *Maunus,* we stated the following, in pertinent part:

[In *P.J.S.,* t]he Supreme Court stated that although it has exclusive jurisdiction to discipline and regulate the professional class of attorneys, it was "ludicrous to suggest that employers are constitutionally precluded from imposing ethical and professional requirements on their employees, some or all of whom may be attorneys." *Id.* at 597, 544 A.2d at 1326. The Supreme Court stated further that this was equally true where the employer is the Commonwealth or one of its subdivisions. *Id.*

This language contained in *Maunus* was the exact language quoted by the Supreme Court in *P.J.S.* when it rejected a current governmental employee's argument that he was shielded or protected from an investigation by the [Ethics] Commission based on his status as a member of the Bar of Pennsylvania. *P.J.S.,* 555 Pa. at 158, 723 A.2d at 178. The Supreme Court in *P.J.S.* stated that "to hold, as appellant suggests, that the mere status of 'attorney' exempts one from meeting the necessary professional regulations which flow from whatever position one holds in addition to that of 'attorney' is absurd." *Id.* at 158, 723 A.2d at 178.

Thus, it is clear that the Supreme Court in *P.J.S.* was not setting forth a new precedent whereby a former public official/public employee may be prohibited by Section 1103(g) of the [Ethics] Act from representing a client before his or her former governmental body, even if that person is an attorney engaged in the practice of law. To the contrary, the Supreme Court in *P.J.S.* merely held that a current governmental employee is not shielded or protected from an investigation into his ethical conduct by the [Ethics] Commission because of his status as an attorney. Therefore, legal precedent is still firmly in place that the [Ethics] Act does not control the con-

duct of an attorney, who is a former official/public employee, in the rendering of professional legal services to clients before his or her former governmental body. The Supreme Court has exclusive jurisdiction to regulate such conduct of the members of the Bar of Pennsylvania. As this Court noted in [*Pennsylvania Public Utility Commission v. Thornburgh,* 62 Pa.Cmwlth. 88, 434 A.2d 1327, 1331, n. 7 (1981), *aff'd per curiam,* 498 Pa. 589, 450 A.2d 613 (1982) ] this conduct is not limited to only those activities, which constitute the practice of law. "[W]here an attorney purports to render professional services to a client, whether or not those services relate to activities which in and of themselves may not constitute the practice of law, the attorney's conduct is regulated by the Supreme Court." *Id.*

We agree with the [Ethics] Commission that not all former public officials/public employees are attorneys. However, this fact does not automatically result in the restrictions found in Section 1103(g) of the [Ethics] Act becoming applicable to the legal representation by an attorney who is a former public official/public employee before his or her former governmental body. To hold otherwise would simply be taking the Supreme Court's decision in *P.J.S.* too far.

The point that the [Ethics] Commission misses is that its opinion affects attorneys as a class even though not all former public officials/public employees are attorneys. All the activities that the [Ethics] Commission ruled that Shaulis, as an attorney, could not perform involve the direct practice of law. The

[Ethics] Commission cannot negate this fact by opining that Section 1103(g) [of the Ethics Act] meets the *P.J.S.* criteria for permissible regulation of attorneys because it regulates all former public officials/public employees and not attorneys specifically.

*Shaulis,* 739 A.2d at 1104–1105.

Based on the foregoing, in considering whether the Act violates the provisions of Article 5, Section 10 of the Pennsylvania Constitution, our focus is not limited to whether or not its provisions merely regulate the conduct of both lawyers and nonlawyers. *Id.* Rather, we must consider whether the Act purports to control the conduct of lawyers in the rendering of professional legal services to clients. *Id.* In short, we must examine whether the Act regulates activities which constitute the "practice of law".

Thus, Petitioners assert that the provisions of the Act are constitutionally infirm because the activities regulated by the Act, when performed by lawyers, constitute the "practice of law". Respondents, Intervenor and *Amici Curiae* counter that because the activities regulated by the Act may be performed by nonlawyers, their performance cannot be considered the "practice of law" and may properly be subject to regulation by the General Assembly.

■ It is well settled that the power to regulate and define what constitutes the "practice of law" is vested in the judiciary, and not in the executive or legislative branches of government. *See, e.g., Matter of Arthur,* 15 Bankr.541 (E.D.Pa.1981).[19] Thus, the provision in Section 1302(b) of

19. *See also Bergdoll v. Kane,* 557 Pa. 72, 88, 731 A.2d 1261, 1270 (1999) (" '[T]he Pennsylvania Constitution grants the judiciary—and the judiciary alone—power over rule-making.' ") (*quoting In re 42 Pa.C.S. § 1703,* 482 Pa. 522, 534, 394 A.2d 444, 451 (1978)); *Stern,* 549 Pa. at 510, 701 A.2d at 570 ("[A]s the ultimate interpreter of the Pennsylvania Constitution, this Court bears the responsibility of determining whether a matter has been exclusively committed to one branch of the government.") (citation omitted); *L.J.S.,* 744 A.2d at 802 ("[B]ecause our Pennsylvania Supreme Court has the sole power and responsibility to supervise the practice, procedure and the conduct of all courts, the General Assembly is precluded from exercising powers which limit the powers entrusted to the judiciary.") (citing *Maunus* ).

the Act, that it "[i]s not intended to govern professional activities which do not include lobbying and which are properly the subject of regulation by the judicial branch...", is not dispositive. Rather, it is the other provision in Section 1302(b) of the Act, that "[l]obbyists and the practice of lobbying shall be subject to this chapter, which shall prevail over any other regulation of professional activity when that activity constitutes lobbying...", that is of critical importance in this case.

In attempting to determine the parameters of what constitutes the "practice of law", the Pennsylvania Supreme Court stated long ago:

There is no need for present purposes to venture upon a comprehensive survey of the boundaries—necessarily somewhat obscure—which limit the practice of law. An attempt to formulate a precise definition would be more likely to invite criticism than to achieve clarity. We know, however, that when a lawyer has, through patient years of study, acquired an understanding of the law and obtained a license to engage in its practice, he applied his knowledge in three principal domains of professional activity:

1. He instructs and advises clients in regard to the law, so that they may properly pursue their affairs and be informed as to their rights and obligations.

2. He prepares for clients documents requiring familiarity with legal principles, beyond the ken of the ordinary layman,—for example, wills and such contracts as are not of a routine nature.

3. He appears for clients before public tribunals to whom is committed the function of determining rights of life, liberty and property according to the law of the land, in order that he may assist the deciding official in the proper interpretation and enforcement of the law...

*Shortz v. Farrell*, 327 Pa. 81, 84, 193 A. 20, 21 (1937). Thus, although the "practice of law" may be difficult to define, it most assuredly encompasses: advising clients regarding the law; preparing documents for clients which require a familiarity with legal principles beyond the ken of the ordinary layman such as wills and contracts; and appearing for clients before public tribunals charged with the power of determining liberty or property rights. *Id.*

■ However, it is important to stress that the "practice of law" is not limited to a lawyer's appearance in court. As it has been previously noted:

[I]t is too obvious for discussion that the practice of law is not limited to the conduct of cases in courts. According to the generally understood definition of the practice of law in this country, it embraces the preparation of pleadings, and other papers incident to actions and special proceedings, and the management of such actions and proceedings on behalf of clients before judges and courts, and, in addition, conveyancing, the preparation of legal instruments of all kinds, and, in general, all advice to clients, and all action taken for them in matters connected with the law. An attorney at law is one who engages in any of these branches of the practice of law. The following is the concise definition given by the Supreme Court of the United States: "Persons acting professionally in legal formalities, negotiations, or proceedings by the warrant or authority of their clients may be regarded as attorneys at law within the meaning of that designation as employed in this country." [*Savings Bank v. Ward*, 100 U.S. 195, 199, 10 Otto 195, 25 L.Ed. 621 (1879).]

*In re Duncan*, 83 S.C. 186, ——, 65 S.E. 210, 211 (1909). In short, "[o]ne who, in a representative capacity, engages in the business of advising clients as to their rights under the law, or while so engaged, performs any act or acts either in court or outside of court for that purpose, is engaged in the practice of law." *Clark v.*

*Austin,* 340 Mo. 467, 478, 101 S.W.2d 977, 982 (1937) (citations omitted).[20]

In addition, in determining whether the activities regulated by the Act constitute the "practice of law" when performed by lawyers, it is not dispositive that nonlawyers may also perform such activities. As noted above, the drafting of documents relating to conveyances and conveyancing are universally recognized as part of a lawyer's "practice of law". *See, e.g., In re Opinion of the Justices; Childs; In re Duncan.* However, as the Pennsylvania Supreme Court has recognized:

Conveyancing by itself is an art and has been referred to as a science... From the earliest days in this Commonwealth, justices of the peace, aldermen and local magistrates have drawn and still continue to draw leases, deeds and mortgages without holding themselves out as lawyers or engaging in the practice of law in the sense condemned by the statute [prohibiting the unauthorized practice of law].[21] Real estate brokers

---

**20.** *See also In re Opinion of the Justices,* 289 Mass. 607, 613, 194 N.E. 313, 317 (1935) ("Practice of law under modern conditions consists in no small part of work performed outside of any court and having no immediate relation to proceedings in court. It embraces conveyancing, the giving of legal advice on a large variety of subjects, and the preparation and execution of legal instruments covering an extensive field of business and trust relations and other affairs."); *Childs v. Smeltzer,* 315 Pa. 9, 13, 171 A. 883, 885 (1934) ("[T]here is a wealth of authority for the proposition that the habitual drafting of legal instruments for hire constitutes the practice of law, even though the individual so engaged makes no attempt to appear in court or to give the impression he is entitled to do so."); *Fitchette v. Taylor,* 191 Minn. 582, 583, 254 N.W. 910, 911 (1934) ("[T]he conduct of litigation is by no means all of legal practice. A lawsuit is but one process of settling an issue of legal right and wrong. Many are disposed of without suit. But the disposition of such issues for others, by advice and negotiation, for hire, is as much the practice of law as though process and pleadings, with or without trial, were necessary. Counsel as to legal status and rights, and conduct in respect thereto, are as much a special function of the English solicitor and the American lawyer as diagnosis, prognosis, and prescription are in the special field of medicine."); *People v. Alfani,* 227 N.Y. 334, 338–339, 125 N.E. 671, 673 (1919) ("[I]t is common knowledge ... that a large, if not the greater, part of the work of the bar to-day is out of court or office work. Counsel and advice, the drawing of agreements, the organization of corporations and preparing papers connected therewith, the drafting of legal documents of all kinds, including wills, are activities which have long been classed as law practice.").

**21.** The statute prohibiting the unauthorized practice of law considered by the Pennsylvania Supreme Court in *LaBrum* was the Act of April 28, 1899, P.L. 117, *as amended,* 17 P.S. §§ 1608, 1609. The present form of the statute prohibiting such conduct may be found at Section 2524 of the Judicial Code, 42 Pa.C.S. § 2524, which states, in pertinent part:

(a) **General rule.**—Except as provided in subsection (b), any person, including but not limited to, a paralegal or legal assistant, who within this Commonwealth shall practice law, or who shall hold himself out to the public as being entitled to practice law, or use or advertise the title of lawyer, attorney at law, attorney and counselor at law, counselor. or the equivalent in any language, in such a manner as to convey the impression that he is a practitioner of the law of any jurisdiction, without being an attorney at law ... commits a misdemeanor of the third degree upon a first violation. A second or subsequent violation of this subsection constitutes a misdemeanor of the first degree.

42 Pa.C.S. § 2524(a).

The purpose underlying this prohibition was expressed by the Pennsylvania Supreme Court as follows:

When a person holds himself out to the public as competent to exercise legal judgment, he implicitly represents that he has the technical competence to analyze legal problems and the requisite character qualifications to act in a representative capacity. When such representations are made by persons not adequately trained or regulated, the dangers to the public are manifest...

*Dauphin County Bar Association v. Mazzacaro,* 465 Pa. 545, 551, 351 A.2d 229, 232 (1976). *See also Shortz,* 327 Pa. at 91, 193 A. at 24 ("[W]hile, in order to acquire the education necessary to gain admission to the bar and thereby become eligible to practice law, one is obliged to 'scorn delights, and live laborious days', the object of the legislation forbidding practice to laymen is not to secure

perform the same acts as incidents of their business... If it be conceded that the preparation of leases, deeds, mortgages and the other instruments mentioned in defendant's answer, constitutes practicing law, that concession does not mean that, while so engaged, the conveyancer is within the prohibition of the statute... A strict construction of the statute excludes the conveyancer; he does not hold himself out as [a] lawyer engaged in practicing law; he is engaged in practicing conveyancing...

*LaBrum v. Commonwealth Title Company of Philadelphia,* 358 Pa. 239, 244–246, 56 A.2d 246, 248–249 (1948) (citations and footnotes omitted).

■ Thus, it is clear that there are activities that may properly be performed by nonlawyers which are considered to be the "practice of law" when performed by lawyers. *See, e.g., In re Carr's Estate,* 371 Pa. 520, 92 A.2d 213 (1952) (A lawyer, not actively engaged in the practice of law, who prepared an individual's income tax returns for five successive years and advised her concerning her right to a refund for the overpayment of taxes, was acting professionally as a lawyer.); *LaBrum; Childs; In re Duncan.*[22] The foregoing merely serves to illustrate the point that although the activities regulated by the Act may be performed by nonlawyers, it does not necessarily follow that the Act's regulation of a lawyer's performance of these activities does not violate the provisions of Article 5, Section 10 of the Pennsylvania Constitution. *See, e.g., Thornburgh,* 434 A.2d at 1331–1332, n. 7 ("[T]he Commission urges that only those activities which do constitute the 'practice of law' are subject to exclusive regulation by the Supreme Court. It is not specific activities but the conduct of *attorneys* that

to lawyers a monopoly, however deserved, but by preventing the intrusion of inexpert and unlearned persons in the practice of law, to assure the public adequate protection in the pursuit of justice, than which society knows no loftier aim."); *Gardner,* 234 Minn. at 477, 48 N.W.2d at 794 ("[T]he purpose for which lawyers are licensed as the exclusive occupants of their field ... is to protect the public from the intolerable evils which are brought upon people by those who assume to practice law without having the proper qualifications.").

22. *See also Columbus Bar Association v. Agee,* 175 Ohio St. 443, 446, 196 N.E.2d 98, 101 (1964) ("[T]here are many areas in which personal services do not constitute the practice of law when done by a layman but which are the practice of law when performed by an attorney, e.g., work in the fields of income tax and trademarks."); *State v. Willenson,* 20 Wis.2d 519, 522–523, 123 N.W.2d 452, 454 (1963) ("Defendant points out that people who are neither accountants nor lawyers do engage in the business of furnishing assistance in filling out income-tax returns. Within narrow limits such service may not be the practice of law and may be rendered by laymen... [However, o]ne who seeks assistance from a lawyer in what appears to him the simplest sort of income-tax problem has a right to have the lawyer live up to all professional standards in furnishing such assistance. If the lawyer recognizes a legal problem not apparent to the client, the lawyer is bound to advise him concerning it. It would be impossible to draw a line between nonprofessional and professional income-tax service when rendered by a lawyer.") (footnotes omitted); *State v. Butterfield,* 172 Neb. 645, 649, 111 N.W.2d 543, 546 (1961) (The respondent admits that he prepared deeds, mortgages, releases, and income tax returns during the period of his suspension [from the practice of law]. Admittedly respondent performed such work prior to his suspension. Some were performed in relation to real estate transactions in which he was the real estate broker, but in others he was not. It seems clear to us that the doing of such work is within the province of a lawyer to do. It is properly identified as the practice of law, whether or not it might under some circumstances be properly performed by others not admitted to the bar.); *Crawford v. State Bar of California,* 54 Cal.2d 659, 667–668, 355 P.2d 490, 495, 7 Cal.Rptr. 746, 751 (1960) ("[A]lthough Howard's services might lawfully have been performed by title companies, insurance companies, brokers, and other laymen, it does not follow that when they are rendered by an attorney, or in his office, they do not involve the practice of law. People call on lawyers for services that might otherwise be obtained from laymen because they expect and are entitled to legal counsel. Attorneys must conform to professional standards in whatever capacity they are acting in a particular matter.") (citations omitted).

**1258**

the Supreme Court regulates. Pa.R.D.E. 103. Thus, where an attorney purports to render professional services to a client, whether or not those services relate to activities which in and of themselves may not constitute the practice of law, the attorney's conduct is regulated by the Supreme Court. Where, as here, our sole concern is with regard to the conduct of attorneys, the nature of the services is

irrelevant to a determination of whether the Supreme Court has exclusive power to regulate.") (emphasis in original).

Without commenting on the constitutionality of the Act in this regard, it cannot be disputed that the activity of lobbying implicates, *inter alia,* the fundamental right to petition the government for the redress of grievances., [23],[24] *United States v. Har-*

**23.** The First Amendment to the United States Constitution provides,. in pertinent part, that "Congress shall make no law . . . abridging . . . the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I. As it has been noted.

The first amendment right of the people to 'petition the Government for the redress of grievances' is one of the cornerstones of our constitutional democracy. Since its ancestral beginnings as an obscure provision in the Magna Carta, the right to petition has been commonly understood to be a procedure of an open and public nature. The history of England includes picturesque exercises of this right including a Chartist petition in 1842 six miles in length which had to be broken into bundles before it could be presented to the House of Commons. The right to petition was incorporated into many of the legislative pronouncements of the rebelling colonies and in the Declaration of Independence. In the 1830's, the Congress was deluged with petitions calling for the abolition of slavery. In response, the House adopted a standing rule that all petitions of this nature would be tabled without public notice, or action of any kind. John Quincy Adams vehemently fought and won repeal of the rule maintaining that not even 'the most object ·despotism' would 'deprive the citizen of the right to supplicate for a boon, or to pray for mercy'. Other notable examples of open and well publicized petitioning in the history of the United states include: the deployment of unemployed armies of petitioners by General Coxey of Ohio in 1894, the march for bonuses by veterans in 1932, and the dramatic marches of the poor led by Dr. King and Reverend Abernathy... We note these examples to emphasize the intrinsically non–secretive and public nature of the historic development of the right to petition.

That right to petition, of course, is not limited to mass demonstrations, highly publicized in newspaper headlines and in television news reports. In sharp contrast, lobbying can be a far more subtle, unpubli-

cized, and we surmise more effective method of petitioning the government. The profound effect that lobbying may have upon the legislative processes is tacitly recognized in common references to lobbyist activities as the 'third house' or the 'fifth estate'. We·take special and emphatic notice of the fact that lobbyists perform important and constructive functions in communicating the wishes of the interests they represent to the appropriate organs of government. In our opinion, the·role of the lobbyist in openly and appropriately communicating with government in regard to legislation and other related functions of government is clearly assured and protected by the first amendment right to petition government.

*Fritz v. Gorton,* 83 Wash.2d 275, 305–306, 517 P.2d 911, 929 (1974) (citation omitted).

**24.** Likewise, Article 1, Section 20 of the Pennsylvania Constitution provides, in pertinent part that "[t]he citizens have a right in a peaceable manner . . . to apply to those invested with the power of government for redress of grievances or other proper purposes, by·petition, address or remonstrance." PA. CONST. art. I, § 20. As the Pennsylvania Supreme Court has noted:

Our state Constitution, by various Sections of article I, provides that all men "have certain inherent and indefeasible rights", among others to address by petition those. invested with the powers of government, and that this "shall forever remain inviolate".

The right in question is a fundamental one, expressly recognized in the organic law of our State as belonging to "citizens"; in other words, it is possessed by members of the State,.or "citizens" to work out the public weal, rather than by individuals, to protect their persons or property or to serve private ends. The Constitution does not confer the right, but guarantees its free exercise—without let or hindrance from those in authority, at all times, under any and all circumstances; and, when this is kept in view, it is apparent that such a

*riss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). *See also Kimbell v. Hooper,* 164 Vt. 80, 83, 665 A.2d 44, 46 (1995) ("Without doubt, lobbying implicates First Amendment guarantees of petition, expression, and assembly, as well as similar rights found in the Vermont Constitution..."); *Fair Political Practices Commission v. Superior Court,* 25 Cal.3d 33, 46, 599 P.2d 46, 53, 157 Cal.Rptr. 855, 862 (1979) ("Among the fundamental rights guaranteed by the First Amendment to the United States Constitution is the right to 'petition the Government for a redress of grievances'. The lobbyist's function obviously is to exercise such right on behalf of his employer..."). Indeed, it has been noted that "[w]hile the term 'lobbyist' has become encrusted with invidious connotations, every person or group engaged, as this one allegedly has been, in trying to persuade Congressional action is exercising the First Amendment right of petition." *Liberty Lobby, Inc. v. Pearson,* 129 U.S.App.D.C. 74, 390 F.2d 489, 491 (C.A.D.C.1968).

■ When viewed in this context, it leads to the inescapable conclusion that when a lawyer is engaged by a client to vindicate this most fundamental of constitutional rights, the lawyer must be deemed to be engaged in the "practice of law" on that client's behalf. As the Pennsylvania Supreme Court stated long ago, "[a]s a class, [lawyers] are supposed to be, and in fact have always been, the vindicators of

individual rights, and the fearless asserters of the principles of civil liberty; existing where alone they can exist, in a government not of parties or men, but of laws!..." *Case of Austin,* 5 Rawle 191, 203, 1835 WL 2736 (1835).

Petitioners, as lawyers, hold themselves out to the public as "competent to exercise legal judgment", and they "implicitly represent[ ] that [they have] the technical competence to analyze legal problems and the requisite character qualifications to act in a representative capacity." *Dauphin County Bar Association.* Petitioners allege that, in exercising this fundamental right on behalf of their clients, they "instruct[ed] and advise[d] clients in regard to the law, so that they may properly pursue their affairs and be informed as to their rights and obligations." *Shortz.* Clearly, such professional activity falls within the ambit of the "practice of law". *Id.See also Clark; In re Opinion of the Justices; Fitchette; Alfani; In re Duncan.*

As noted above, the fact that a nonlawyer may engage in the same activity is immaterial. When employed for such a service, Petitioners are clearly drawing upon their professional capabilities and performing a service directly related to their distinct training in the law. In short, when performing such a service on behalf of their clients, Petitioners are engaged in the "practice of law". *Shortz; Thornburgh.*[25]

prerogative can neither be denied by others nor surrendered by the citizen himself.
*Spayd v. Ringing Rock Lodge,* 270 Pa. 67, 70–71, 113 A. 70, 72 (1921) (citation omitted).

**25.** It is critically important to this analysis that Petitioners are acting in a professional representative capacity when engaged in the activities regulated by the Act. As the United States Supreme Court noted long ago:

There are few of the business relations of life involving a higher trust and confidence than that of attorney and client, or, generally speaking, one more honorably and faithfully discharged; few more anxiously guarded by the law, or governed by sterner principles of morality and justice; and it is

the duty of the court to administer them in a corresponding spirit, and to be watchful and industrious, to see that confidence thus reposed shall not be used to the detriment or prejudice of the rights of the party bestowing it.
*Stockton v. Ford,* 52 U.S. 232, 247, 11 How. 232, 13 L.Ed. 676 (1850). To this end, the Pennsylvania Supreme Court has promulgated a number of rules governing Petitioners' conduct while acting in this capacity. *See,* e.g., Rules of Professional Conduct 1.1—1.16, 2.1 – 2.3, 3.1, 3.2, 4.1 – 4.4.

As noted above, Section 1302(b) of the Act states, in pertinent part, that it "[i]s not intended to govern professional activities which do not include lobbying and which are prop-

 In reaching this conclusion, we also note that the Act specifically includes a lawyer's direct communications with officials in administrative agencies within the ambit of the activities that it regulates. *See, e.g.,* Section 1303 of the Act, 65 Pa. C.S. § 1303 (defining "Administrative action", "Direct communication", "Lobbying", "Lobbyist" and "State official or employee"). In addition, as noted above, Section 1306 of the Act states, in pertinent part:

> *The following individuals and activities shall be exempt from registration under Section 1304* (relating to registration) *and reporting under Section 1305* (relating to reporting):
>
> (1) *An individual who limits lobbying activities to . . . participating*

*in an administrative proceeding* [26] *of an agency.*

65 Pa.C.S. § 1306 (emphasis added).

Thus, the activities regulated by the Act specifically include a lawyer's involvement in the administrative proceedings of an agency. The exemption in Section 1306 merely excepts lawyers engaged in such activities from the registration requirements of Section 1304 and the reporting requirements of Section 1305. All of the other provisions of the Act[27] apply to lawyers engaged in such activities. It cannot be doubted that such activities, when performed by a lawyer, constitute the "practice of law" and are subject to the exclusive regulation by the Pennsylvania Supreme Court. *See, e.g., Shortz.*

Moreover, it is of particular significance that the Pennsylvania Supreme Court has

---

erly the subject of regulation by the judicial branch of government..." 65 Pa.C.S. § 1302(b). This provision suggests that Petitioners can subdivide their conduct while acting in this capacity. However, as noted above, in a different context the Wisconsin Supreme Court stated the following:

> We consider the argument untenable. One who seeks assistance from a lawyer in what appears to him the simplest sort of income-tax problem has a right to have the lawyer live up to all professional standards in furnishing such assistance. If the lawyer recognizes a legal problem not apparent to the client, the lawyer is bound to advise him concerning it. It would be impossible to draw a line between nonprofessional and professional income-tax service when rendered by a lawyer...

*Willenson,* 20 Wis.2d at 522–523, 123 N.W.2d at 454.

**26.** The term "administrative proceeding" is not defined in the Act. It is a rule of statutory construction that where terms are not otherwise defined in a statute, "[w]ords and phrases shall be construed according to their common and approved usage..." Section 1903 of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1903. We generally use dictionaries as source material for determining the common and approved usage of a term. *Love v. City of Philadelphia,* 518 Pa. 370, 543 A.2d 531 (1988). The term "administrative proceeding" is defined as "[a] hearing, inquiry, investigation, or trial before an administrative agency, usu. adjudicatory in nature but sometimes quasi-legislative. — Also termed

*evidentiary hearing; full hearing; trial-type hearing; agency adjudication."* Black's Law Dictionary 46 (7th ed.1999).

It is another tenet of statutory construction that we presume "[t]hat the General Assembly does not intend a result that is absurd, impossible or execution or unreasonable...", and "[t]hat the General Assembly intends the entire statute to be effective and certain." Sections 1922(1) and (2) of the Statutory Construction Act, 1 Pa.C.S. § 1922(1), (2). If we were to construe "administrative proceeding" in its most limited sense, relating to an administrative agency acting in a quasi-legislative capacity, it would lead to an absurd result. So construed, the Act would provide in Sections 1303, 1304 and 1305 that a lobbyist who exclusively lobbies an administrative agency regarding the promulgation or approval of a regulation must register and report with the Commission. However, Section 1306 of the Act would then exempt these lobbyists from the registration and reporting requirements. Thus construed, Section 1306 of the Act would be the exception that swallowed the rule. As a result, the term "administrative proceeding" must be construed in the common and approved general sense, as one in which the administrative agency is acting in an adjudicatory capacity.

**27.** *See, e.g.,* Section 1307(a),(b) of the Act, 65 Pa.C.S. § 1307(a),(b) (relating to the prohibitions regarding contingent compensation and participation as an officer for a candidate's political committee or political action committee).

promulgated specific rules governing the conduct of lawyers engaged in both the adjudicative and nonadjudicative activities regulated by the Act. *See, e.g.,* Rules of Professional Conduct 3.3, 3.4, 3.5, 3.9. Thus, the mere fact that the Supreme Court has deigned it appropriate to act in this regard may support this conclusion. *See e.g., Stern* (A statute criminalizing lawyers' practice of paying for referrals violated Article 5, Section 10 of the Pennsylvania Constitution as the Supreme Court has the exclusive authority to supervise the conduct of lawyers and it specifically dealt with the conduct prohibited by the statute in a rule of professional conduct.); *Kury v. State Ethics Commission,* 62 Pa.Cmwlth. 174, 435 A.2d 940 (1981) (The provisions of the Ethics Act as applied to a lawyer constituted an impermissible legislative intrusion into an area reserved to the Supreme Court and in an area where the Court has acted to regulate the conduct of attorneys.).[28] *But cf. P.J.S.,* 555 Pa. at 157–158, 723 A.2d at 178 ("Contrary to appellant's assertion, the fact that the conduct proscribed by the conflict of interest provisions of the Ethics Act is similar to

that proscribed by the Rules of Professional Conduct, does not mean that the Commission's investigation is barred. Appellant is not exempt from the jurisdiction of the Commission by virtue of his status as an attorney. Rather, appellant is subject to the jurisdiction of this court because of his status as an attorney.").

In support of their position that the Act does not unconstitutionally regulate the "practice of law", Respondents, Intervenor and *Amici Curiae* direct our attention to the opinions of other state courts. In particular, these parties cite to, *inter alia,* the opinions in *Baron v. City of Los Angeles,* 2 Cal.3d 535, 469 P.2d 353, 86 Cal.Rptr. 673 (1970), *Pletz v. Secretary of State,* 125 Mich.App. 335, 336 N.W.2d 789 (1983), and *State Bar of Montana v. Krivec,* 193 Mont. 477, 632 P.2d 707 (1981). However, these cases do not compel a different conclusion.

For example, in *Baron,* the Supreme Court of California considered a claim that a municipal ordinance requiring the registration of those engaged in lobbying was invalid as it conflicted with a state statute regulating the "practice of law".[29] Thus,

---

**28.** *See also Kremer v. State Ethics Commission,* 503 Pa. 358, 363, 469 A.2d 593, 595–596 (1983) ("[T]he financial disclosure provisions of the Ethics Law infringe on our power to supervise courts and are, therefore, unconstitutional as applied in the instant case. Pursuant to our supervisory power, we have established a Code of Judicial Conduct applicable to judges, which rules contain detailed provisions designed to prevent conflicts of interest, financial and otherwise. Where judges are involved, these rules advance the interest that the Ethics Commission seeks to serve through application of the Ethics Law. If further refinement is required, it must be accomplished through rules promulgated by this Court and not by legislative enactment."); *Wajert v. State Ethics Commission,* 491 Pa. 255, 420 A.2d 439 (1980) (The provisions of the Ethics Act that no former official or public employee could represent a person on any matter before the governmental body with which the official was associated were unconstitutional as applied to a former judge as the Supreme Court had specifically exercised its power to promulgated rules dealing with the mischief the statute attempted to address.).

**29.** It should be noted that, unlike Pennsylvania, California has an "integrated bar" whereby those admitted to the bar by the California Supreme Court are required to join the California State Bar, an organization created by the provisions of the State Bar Act, CAL. BUS. & PROF. CODE §§ 6000 – 6172 (West 1990). *Keller v. State Bar of California,* 496 U.S. 1, 110 S.Ct. 2228, 110 L.Ed.2d 1 (1990). The activities of those admitted to practice law are subject to legislative regulation and control under the provisions of that Act, and are subject to the disciplinary provisions of that Act. *Id.* Thus, unlike Pennsylvania, California has long recognized that the admission and regulation of those practicing law within its borders is a subject properly addressed by its legislature. *See, e.g., State Bar of California v. Superior Court,* 207 Cal. 323, 331, 278 P. 432, 435 (1929) ("[T]he membership, character and conduct of those entering and engaging in the legal profession have long been regarded as the proper subject of legislative regulation and control; and it has never been heretofore considered, so far as we have been made aware, that, at least in this commonwealth, the exercise of a reasonable degree of regulation and control over the profession

the opinion in that case involved an interpretation of the statutory provisions regulating the "practice of law", and whether the provisions of the municipal ordinance conflicted with this state statute because the statute preempted this field of regulation. As the court stated:

> [T]he State Bar Act preempts the field of regulation of attorneys only insofar as they are "practicing law" under the act—i.e., performing services in a representative capacity in a manner which would constitute the unauthorized practice of law if performed by a layman. Such an interpretation of the act is consistent with its language and its general scope. The act is concerned primarily with the admission to the profession, regulating the conduct of those admitted, and disciplining transgressors. As a licensing statute, it distinguishes between the rights and obligations of those granted licenses and the general population. Thus, although the ethical standards in the act may apply to attorneys in all of their professional activities, the act in its entirety constitutes an exclusive state regulatory scheme only insofar as it governs the activities which only licensed attorneys can lawfully perform.

On the basis of detailed findings, the trial judge properly held that [the ordinance] was valid as applied to attorneys, except when they are "acting on behalf of others in the performance of a duty or service, which duty or service lawfully can be performed for such other only by an attorney licensed to practice law in the State of California." To the extent that the ordinance purports to govern lawyers' activities which constitute the "practice of law" within the State Bar Act, it invades a field of regulation preempted by state law, and lawyers whose services for clients in proceedings

before city agencies fall within that definition need not register... For illustrative purposes, we indicate that an attorney representing a client before a city board or commission which is holding a hearing to reach a quasi-judicial decision on a matter involving factual and legal questions need not register under the ordinance; on the other hand, an attorney authorized by a client to appear at hearings considering local legislation in order to argue for or against the adoption of that legislation would be within the legitimate thrust of the ordinance...

*Baron*, 2 Cal.3d at 543–544, 469 P.2d at 358–359, 86 Cal.Rptr. at 678–679 (citations omitted).

The opinion in *Baron* does not compel a different conclusion as that case involved the interpretation of the ordinance regulating lobbying and the state statute defining and regulating the "practice of law". Thus, the decision is limited in its scope as it exclusively relates to the interpretation of these discrete statutory provisions.

In *Pletz*, the Court of Appeals of Michigan considered, *inter alia*, a claim that a state statute regulating lobbying unconstitutionally regulated the "practice of law". In rejecting this claim, the court stated:

> [W]e do not find that the Act attempts to regulate the practice of law. The Act treats attorneys who lobby in an identical manner as non-lawyers, except the Act, in § 2(1), specifically does not govern attorneys' communications with officials in administrative agencies. Attorneys whose activities relate to the practice of law, for example involvement in a quasi-judicial determination (administrative law), do not fall under the ambit of the Act.

*Pletz*, 125 Mich.App. at 348, 336 N.W.2d at 796.[30]

---

and practice of the law, constituted an intrusion into the domain of our state organization constitutionally assigned to the judicial department thereof. From almost the inception of our state government statutory provision

has been made for the admission, disbarment, suspension or disciplining of members of the legal profession...").

**30.** It should also be noted that in *Pletz*, the court determined that a number of the pro-

As noted above, unlike the Michigan statute, the activities regulated by the Pennsylvania Act specifically include a lawyer's involvement in the administrative proceedings of an administrative agency. Section 1306 merely exempts lawyers engaged in such activities from the registration requirements of Section 1304 and the reporting requirements of Section 1305.

Likewise, in *Krivec*, the Montana Supreme Court considered a claim that a state statute regulating lobbying unconstitutionally regulated the "practice of law". The statute involved in that case also specifically excluded from its ambit activities relating to administrative bodies acting in a quasi-judicial capacity. *See Krivec*, 193 Mont. at 482, 632 P.2d at 710 ("Since lobbying under the Initiative does not include using influence in opposing official action by public officials engaged in a quasi-judicial capacity, Section 2(4)(b), supra, the marked delimiting effect of that exception should be noted...").[31] Thus, this opinion is equally distinguishable as that in *Pletz*.[32]

■ In conclusion, included within the ambit of the activities regulated by the Act is conduct that constitutes the "practice of law" when performed by Petitioners. *In*

visions of the statute were constitutionally infirm including those relating to: the regulation of religious institutions engaged in lobbying; and the required disclosure of the identities of persons who contribute to lobbying agents and organizations. *Id.*, 125 Mich.App. at 373–376, 336 N.W.2d at 808–810. As a result, the court merely severed these unconstitutional provisions, thereby allowing the remainder of the statute to remain in effect. *Id.*

31. It is important to note that in *Krivec*, the Montana Supreme Court relied on its earlier opinion in *Montana Automobile Association v. Greely*, 193 Mont. 378, 632 P.2d 300 (1981) in which it first considered a constitutional challenge to the provisions of its lobbying statute. In *Montana Automobile Association*, the court determined that a number of the provisions of the statute were unconstitutional including those relating to: an exception of its application to Montana citizens; the definitions of "unprofessional conduct" and "principal"; the prohibition against contingent compensation; and a number of the items that were to be reported under the accounting requirements. *Id.*, 193 Mont. at 384–399, 632 P.2d at 304–311. As a result, like the court in *Pletz*, the court in *Montana Automobile Association* merely severed these unconstitutional provisions, thereby allowing the remainder of the statute to remain in effect. *Id.*, 193 Mont. at 399–400, 632 P.2d at 311–312.

32. The parties also cite to the opinions in *Kavanagh v. County of Will*, 293 Ill.App.3d 880, 228 Ill.Dec. 427, 689 N.E.2d 299 (1997) and *Reilly v. Ozzard*, 33 N.J. 529, 166 A.2d 360 (1960). In *Kavanagh*, the court was presented with a challenge to a county ordinance regulating lobbying that was enacted pursuant to the authority conferred by a state statute regulating lobbying. In rejecting a claim that the ordinance improperly regulated attorneys, the court specifically noted that the parties did not challenge the validity of the state statute which conferred the authority to impose such regulation. *Id.*, 293 Ill.App.3d at 885, n. 1, 228 Ill.Dec. 427, 689 N.E.2d at 303, n. 1. The court specifically determined that the ordinance did not improperly regulate the "practice of law" because it did not limit the ability of any lawyer to appear in court, and because it contained substantially the same registration requirements as the state statute. *Id.*, 293 Ill.App.3d at 885, 228 Ill.Dec. at 431, 689 N.E.2d at 303.

In *Reilly*, the court was presented with the question of whether the common law doctrine prohibiting an individual from holding two incompatible public offices barred a state senator from also serving as a municipal attorney. It was argued that two offices were incompatible because a municipal attorney has a duty to lobby the legislature, and this duty would conflict with a legislator's duty to legislate. In rejecting this claim, the court examined the duties of these positions and noted:

[T]hat local government has the right to seek to oppose legislation affecting its interests is settled. Whether a municipality is under a duty to do so is another matter, and whether that duty, if it exists, attaches to a specific office in local government, we need not inquire. It is enough to say that it is not inherently a lawyer's role and that in the present case the ordinance defining the duties of the township attorney does not impose that obligation and we know of no statute which does.

*Id.*, 33 N.J. at 544–545, 166 A.2d at 368 (citations omitted). Again, because these cases involved the disposition of issues that are distinctly distinguishable from those presented in this matter, their analyses are not helpful in our disposition of this case.

re Carr's Estate; Shortz; LaBrum; Childs; Thornburgh. *Pursuant to Article 5, Section 10 of the Pennsylvania Constitution, the authority to regulate Petitioners' conduct in this regard is exclusively vested in the Pennsylvania Supreme Court, and the Court has exercised its authority to regulate such activity.* Stern; Kremer; Wajert; Shaulis; Thornburgh; Kury; *Pa. R.D.E. 103. As a result, the provisions of the Act which purport to regulate Petitioners' professional activities must be deemed to be "[a] vain attempt by the legislature to exercise a power which it does not possess."* Stern; Hoopes. *Moreover, because Section 1311(b) states that all of the provisions of the Act are void "[i]f any provision of this chapter or its application to any person or circumstance is held invalid on the basis of improper regulation of*

the practice of law...", the entire Act must be declared void.[33]

Accordingly, Petitioners' motion for summary judgment is granted; Respondents' motions for summary judgment are denied; Intervenor's motion for judgment on the pleadings is denied.

## O R D E R

AND NOW, this 18th day of May, 2000, the motion for summary judgment of Richard J. Gmerek and Charles I. Artz is hereby granted; the motion for summary judgment of the State Ethics Commission is denied; the motion for summary judgment of the Honorable Mike Fisher, Attorney General, is denied; the motion for judgment on the pleadings of Mark R. Corrigan, Secretary of the Pennsylvania Senate is denied. The Lobbying Disclo-

---

**33.** As indicated, this result is compelled by the provisions of Section 1311(b) of the Act, 65 Pa.C.S. § 1311(b). This should not be construed as a commentary on the propriety or efficacy of the other provisions of the Act, the laudable purpose of which is so cogently expressed in Section 1302(a) as follows:

> [T]he ability of the people to exercise their fundamental authority and to have confidence in the integrity of the process by which laws are made and enforced in this Commonwealth demands that the identity and the scope of activity of those employed to influence the actions of the General Assembly and the Executive Department be publicly and regularly disclosed.

65 Pa.C.S. § 1302(a). Indeed, as the United States Supreme Court has noted:

> Present-day legislative complexities are such that individual members of Congress cannot be expected to explore the myriad pressures to which they are regularly subjected. Yet full realization of the American ideal of government by elected representatives depends to no small extent on their ability to properly evaluate such pressures. Otherwise the voice of the people may all too easily be drowned out by the voice of special interest groups seeking favored treatment while masquerading as proponents of the public weal. This is the evil which the Lobbying Act was designed to protect...

*Harriss*, 347 U.S. at 625, 74 S.Ct. 808. Undoubtedly, the Pennsylvania General Assembly may properly enact legislation regulating the conduct of individuals in this regard when

these activities do not constitute the "practice of law". *Id.*

However, the thrust of our opinion in this case merely demonstrates that, pursuant to Article 5, Section 10 of the Pennsylvania Constitution, it is within the exclusive authority of the Pennsylvania Supreme Court to regulate this conduct when it constitutes the "practice of law". As noted above, the Pennsylvania Supreme Court has acted to promulgate a number of rules governing Petitioners' conduct while acting in a professional representative capacity for their clients, and while engaged in the activities regulated by the Act. *See, e.g.,* Rules of Professional Conduct 1.1–1.16, 2.1–2.3, 3.1–3.5, 3.9, 4.1–4.4. If or when the Supreme Court deigns it appropriate to impose the same or similar requirements on its officers is entirely within its discretion. *See, e.g., Kremer*, 503 Pa. at 363, 469 A.2d at 595–596 (1983) ("[T]he financial disclosure provisions of the Ethics Law infringe on our power to supervise courts and are, therefore, unconstitutional as applied in the instant case. Pursuant to our supervisory power, we have established a Code of Judicial Conduct applicable to judges, which rules contain detailed provisions designed to prevent conflicts of interest, financial and otherwise. Where judges are involved, these rules advance the interest that the Ethics Commission seeks to serve through application of the Ethics Law. If further refinement is required, it must be accomplished through rules promulgated by this Court and not by legislative enactment.")

sure Act, 65 Pa.C.S. §§ 1303–1311, is hereby declared void.

Dissenting opinion by Judge FLAHERTY joined by President Judge DOYLE and Judge LEADBETTER.

FLAHERTY, Judge, dissenting.

I respectfully dissent. Because Richard Gmerek and Charles Artz (Petitioners) have not met their burden to prove that the Lobbying Disclosure Act (the Lobbying Act), 65 Pa.C.S. §§ 1303–1311, is un-·constitutional and because the Majority's reasoning is flawed, I cannot join the opinion of the Majority.

Our beginning point must be that every statute is presumed to be constitutional. *League of Women Voters v. Commonwealth,* 692 A.2d 263, 269 (Pa.Cmwlth. 1997). If a statute is capable of two constructions, one of which renders it constitutional and one of which renders it unconstitutional, we must construe it so as to render it constitutional. *Prichard v. School District of Willistown Township,* 394 Pa. 489, 147 A.2d 380 (1959); *Golden Triangle News, Inc. v. Corbett,* 689 A.2d 974, 985 (Pa.Cmwlth.1997)("the court notes that it is compelled to construe a statute in a manner which is constitutional."). Petitioners here mount a challenge to the constitutionality of the Lobbying Act, arguing that the Lobbying Act violates the separation of powers because it necessarily regulates the practice of law, contrary to the Supreme Court's exclusive right to do so. See Petitioners' Petition for Review at ¶¶ 27–30. Thus, the Petitioners must therefore show that the Lobbying Act necessarily regulates the practice of law.

Petitioners allege that the Lobbying Act is unconstitutional because its provisions violate the constitutional separation of powers by infringing on the Supreme Court's exclusive authority to regulate the conduct of attorneys. The Petitioners concede that the General Assembly may supplement but not supplant the Supreme Court's rules governing the conduct of attorneys engaged in the private practice of law. Petitioners' Brief in Support of Petitioner's Motion for Summary Judgment (Petrs. Main Brief) at p. 16. The Petitioners further allege that specific provisions of the Lobbying Act supplant rather than supplement the rules governing the conduct of attorneys. This concession by Petitioners, that the General Assembly may supplement but not supplant the Supreme Court's rules governing the conduct of attorneys and the rule of construction that we must interpret statutes if possible in such a way as to render them constitutional, *English v. School District of Robinson,* 358 Pa. 45, 54, 55 A.2d 803, 809 (1947) establishes the Petitioners' burden of proof herein. That burden is to prove that the Lobbying Act supplants the Supreme Court's rules governing attorney conduct, i.e., that the Lobbying Act is irreconcilable with or contrary to the Supreme Court's rules.

The Supreme Court's rules governing the conduct of attorneys admitted to practice in the bar of this Commonwealth are the Rules of Professional Conduct (RPC) promulgated by the Pennsylvania Supreme Court made effective April 1, 1988. 204 Pa.Code § 81.4

Petitioners point directly to Section 1309 of the Lobbying Act and assert that it conflicts with the Supreme Court's sole power to discipline attorneys. Section 1309 of the Lobbying Act is entitled "Penalties" and provides that failures to comply with the Lobbying Act can include civil fines and penalties including prohibitions on lobbying for up to five years. Section 1309(e) provides that intentional violations of the Act subject a lobbyist to being prosecuted for a misdemeanor of up to the third degree. Petitioners argue that Section 1309 purports to empower the State Ethics Commission to decide who may practice law as a lobbyist. Petrs. Main Brief at p. 24.

Petitioners' contention is readily answered by *P.J.S. v. Pennsylvania State Ethics Commission,* 555 Pa. 149, 723 A.2d

174 (1999), wherein the Supreme Court made clear that a law which does not specifically aim at regulating the class of attorneys and which makes certain actions illegal for all individuals some of whom may be attorneys does not infringe on the Supreme Court's right to discipline attorneys. Here, Petitioners are essentially arguing that because of their status as attorneys, they must be exempt from having to comply with the Lobbying Act because it regulates the practice of law. I fail to see how Petitioners' argument is, in any legally significant way, different than the appellant's argument in *P.J.S.* The appellant in *P.J.S.* was a solicitor for a city and also conducted a private law practice. In his private law practice, he agreed to represent the city's insurer in a private tort suit filed against the city. The State Ethics Commission launched an investigation against the appellant based upon a potential conflict of interest between his role as solicitor and his private representation of the city's insurance company in the tort suit. The appellant sought a declaratory judgment that the Ethics Commission's investigation of and its application of the Ethics Act to him violated the separation of powers because the Ethics Act and the Ethics Commission's actions sought to regulate appellant's conduct as an attorney. The Supreme Court rejected appellant's contention and stated: "[t]o hold, as appellant suggests, that the mere status of 'attorney' exempts one from meeting the necessary professional regulations which flow from whatever position one holds in addition to that of an 'attorney' is absurd." *P.J.S.*, 555 Pa. at 158, 723 A.2d at 178.

Petitioners' argument here is the same as was appellant's argument in *P.J.S.*

Moreover, Petitioners' argument that prohibiting them from lobbying will, in effect, end their practice of law because it will end their lobbying is unpersuasive. It assumes, without demonstrating how, their practice of law, the conducting of legal analysis and the rendering of legal opinions and advising clients based thereon will be ended simply because they cannot provide gifts or gratuities to legislators and agency personnel or directly communicate with such persons or indirectly communicate with those persons for the purpose of influencing them to take legislative or administrative action (which by definition does not include adjudicative action) *See* 65 Pa.C.S. § 1303 (defining lobbying and direct and indirect communication and administrative action). The attorney who lobbies is no different than an attorney who, being both a realtor and a lawyer, is disciplined by the Board of Realtors and is prohibited from practicing as a realtor. Such an attorney-realtor would not be heard to complain that his or her legal practice as a realtor has been terminated by the Board of Realtors in contravention of the Supreme Court's authority to discipline him or her. The Commission's potential disciplining of a lobbyist who also happens to be an attorney does not necessarily prevent such an attorney who acts as a lobbyist from appearing before adjudicative bodies, from being hired to offer legal opinions or legal analysis, or from preparing legal documents. Instead, the Lobbying Act only prohibits lobbying as that activity is defined therein. Therefore, the Commission's ability to discipline lobbyists does not infringe on the Supreme Court's right to discipline attorneys.[1]

---

**1.** My position here is not at odds with my position in *Shaulis v. State Ethics Commission,* 739 A.2d 1091 (Pa.Cmwlth.1999), wherein I joined Judge McGinley's concurring and dissenting opinion. Therein Judge McGinley reasoned that Shaulis was being deprived of her right to practice law in contravention of the Supreme Court's jurisdiction to supervise the practice of law, because the Commission purported to prevent her from

acting as a legal advocate in quasi-judicial proceedings before the agency she was formerly employed by. While the practice of law may not be susceptible of ready definition, I think that the practice of law of necessity encompasses the appearance by a licensed attorney in a representative capacity before an adjudicative body (as opposed to a policy making body) on behalf of a client. It is not as clear to me that the appearance of a

The Majority reasons that there are acts that may be performed by lawyers and non-lawyers, *viz.*, vindicating the right of one to petition the government. When performed by lawyers these neutral acts become the practice of law and are therefore solely within the province of the Supreme Court to regulate because these acts constitute the practice of law. Thus, the legislature's attempt to regulate the performance of these neutral acts when performed by lawyers constitutes an infringement on the Supreme Court's exclusive constitutional authority to regulate the practice of law and hence violates the separation of powers. The Majority includes in

the definition of vindicating the right of petitioning the government when performed by attorneys, the utilizing of technical competence to analyze legal problems and the instructing and advising of clients in regard to the law so that the clients may properly pursue their affairs and be informed of their rights and obligations. Maj. op. at p. 1259. I would readily concede that such activities by attorneys constitute the practice of law. But the Majority fails to inform us as to how these activities are covered by the Lobbying Act. The Majority simply ignores the definition of lobbying which is what the Lobbying Act at issue covers.[2] The Majority fails to

licensed attorney before a policy making body encompasses the practice of law such as to infringe on the Supreme Court's authority to discipline lawyers, anymore so than when the Board of Realtors disciplines a realtor who happens to be an attorney.

I did not join the Majority's dicta in *Shaulis* wherein the Majority stated:

[W]here an attorney purports to render professional services to a client, whether or not those services relate to activities which in and of themselves may not constitute the practice of law, the attorney's conduct is regulated by the Supreme Court.

*Shaulis,* 739 A.2d at 1105, quoting *Pennsylvania Public Utility Commission Bar Assoc. v. Thornburgh,* 62 Pa.Cmwlth. 88, 434 A.2d 1327, 1331, n. 7 (1981), *aff'd. without opinion,* 498 Pa. 589, 450 A.2d 613 (1982).

2. The closest the Majority comes to addressing how the Lobbying Act governs activities which constitute the practice of law is at pp. 1260–61 when they note that the Lobbying Act governs a lawyer's participation in an administrative proceeding of an agency. The Majority, noting that "administrative proceeding" is not defined in the Act, goes on to construe the term to include instances when the administrative agency acts in an adjudicatory capacity. The Majority thus concludes that the Lobbying Act regulates attorneys who represent clients before the agency in their role as an advocate before an adjudicative body. The flaw in the Majority's construction of the term is that it ignores two rules of construction. In contravention of the rule of construction, *noscitur a sociis,* the Majority ignores the context of the term. The rule of construction *"noscitur a sociis"* is a rule providing that a word or phrase is known by its associates or by its context. *L.B. Foster v. Southeastern Pennsylvania*

*Transportation Authority,* 705 A.2d 164 (Pa. Cmwlth.1997), *allocatur denied,* 557 Pa. 633, 732 A.2d 617 (1998). The complete context of the provision at issue is that the Lobbying Act's registration and reporting requirements do not apply to "[a]n individual who limits lobbying activities to preparing testimony and testifying before a committee of the legislature or participating in an administrative proceeding of an agency." The Majority reasons that although this provision exempts attorneys appearing before agencies acting in their adjudicative capacities, it must mean that the rest of the Lobbying Act applies to attorneys who appear before administrative agencies acting in their adjudicative capacities. However, the application of the rule "noscitur a sociis," leads to the conclusion that "participating in an administrative proceeding" means only those who prepare testimony and testify before administrative agencies which are conducting hearings to solicit input when considering proposed rules or formulation of regulatory policy. It is plain to me that this provision exempting such lobbyists who limit their activities to preparing testimony and testifying before the legislature or agencies from reporting requirements applies to witnesses before committees and agencies considering policies and not when agencies are acting in their adjudicative capacities. *See* Section 1303 of the Lobbying Act, defining "administrative action" to mean essentially the agency's consideration of a regulation or proposed regulation and the development of a guideline or statement of policy. Furthermore, that one whose lobbying activity is limited to appearing as a witness before committees or agencies would be exempt from the Lobbying Act's registration and reporting requirements does not lead to an absurd result contrary to the Majority's

demonstrate how a lawyer's providing a legal opinion to a client as to the legality of proposed regulations or the meaning of a law or a proposed law and the lawyer's advice to the client as to the client's rights to petition the government is a "direct communication" to a state employee or official or is an "indirect communication" i.e., an effort to encourage the client to take action, the purpose or foreseeable effect of which is to directly influence legislative action or administrative action. See Section 1303 of the Act defining lobbying and direct communication and indirect communication. The Majority seems to hold that a lawyer's mere providing of legal information or legal analysis is, as a matter of law, to be deemed to be an effort to encourage the client to take action and thus constitutes lobbying. In doing so, the Majority fails to give sufficient weight to the fact that the Lobbying Act specifically provides that "[t]his chapter is not intended to govern professional activities which do not include lobbying and which are properly the subject of regulation by the judicial branch of government...." Section 1302(b).

Thus, the Majority has simply failed to demonstrate that the Lobbying Act regulates the practice of law. But even if the Lobbying Act did incidentally regulate the practice of law, it does not follow that such incidental regulation of the practice of law is unconstitutional. For "the doctrine of separation of powers does not contemplate total separation of the three branches of government, and some powers may overlap. The lines of division are often indeterminate and incapable of exact definition." *Grant v. GAF, Corp.*, 415 Pa.Super. 137, 608 A.2d 1047, 1060 (1992), *aff'd*, 536 Pa. 429, 639 A.2d 1170 (1994), *citing Swee-*

*ney v. Tucker*, 473 Pa. 493, 375 A.2d 698 (1977); *Lloyd v. Fishinger*, 529 Pa. 513, 605 A.2d 1193 (1992). Thus, even if the Lobbying Act incidentally regulates the conduct of an attorney in the practice of law, it does not necessarily follow that the Act is unconstitutional. In *P.J.S.*, the lawyer at issue therein was being investigated by the Ethics Commission for a violation of the Ethics Act for representing the insurer of the city in a tort suit while at the same time acting as a solicitor for the city. The lawyer's conduct which the Commission sought to investigate and regulate in *P.J.S.*, was, unlike here, unquestionably and quintessentially the practice of law, i.e., representing clients before an adjudicative body. Nevertheless, the Supreme Court held in *P.J.S.* that such did not infringe on the Supreme Court's exclusive jurisdiction, reasoning that

> [t]he jurisdiction of this court is exclusive in the sense that it applies equally to all members of the Bar of Pennsylvania. The exclusive jurisdiction of this court is infringed when another branch of government attempts to regulate the conduct of attorneys merely because of their status as attorneys. However, the jurisdiction of this court is not infringed when a regulation aimed at conduct is applied to all persons, and some of those persons happen to be attorneys.

*P.J.S.*, 555 Pa. at 158, 723 A.2d at 178. Nothing could be clearer than that holding and the fact that the Lobbying Act is a regulation aimed at conduct applied to all persons where some of those persons happen to be attorneys. Thus, as in *P.J.S.*, the Supreme Court's exclusive jurisdiction to govern attorneys is not infringed here.

---

assertion. Such a lobbyist-witness does his lobbying in a public forum for all to see and the legislature could reasonably conclude that such lobbying need not be further disclosed than it already is, i.e., publicly appearing before the legislature or a committee or an agency testifying on the record.

Finally, to the extent that the phrase is equally capable of the construction I suggest

as well as the construction which the Majority espouses, the rule of construction compelling us to construe a statute as constitutional if at all possible compels my construction. *Prichard v. School District of Willistown* (where a statute may be construed in both an unconstitutional way and a constitutional way, we are to construe it in a constitutional way).

Petitioners also argue that Section 1307 of the Lobbying Act conflicts with RPC Rule 1.5(c). Section 1307(a)(1) prohibits anyone from compensating a lobbyist, principal or an individual to engage in lobbying contingent in whole or in part upon any of the following: "(i) Passage or defeat, or approval or veto, of legislation. (ii) Occurrence or nonoccurrence of an administrative action." Section 1307(a)(2) prohibits any lobbyist or principal or individual from agreeing to engage in lobbying contingent in whole or in part on the above two bases. Rule 1.5(c) of the RPC provides that "A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) [not relevant here] **or other law**." (emphasis added). Petitioners maintain that the Lobbying Act is in conflict with the RPC inasmuch as contingent fees which are permitted by the RPC are forbidden by the Lobbying Act. However, a simple reading of the two texts reveal that they are not in conflict. The Supreme Court's language in Rule 1.5(c) specifically contemplates that other law may regulate contingent fee agreements. Section 1307 of the Lobbying Act is just such law. As Section 1307 of the Lobbying Act does not supplant Rule 1.5(c), it does not unconstitutionally infringe on the Supreme Court's power to regulate attorneys.

Petitioners' reliance on *Heller v. Frankston*, 76 Pa.Cmwlth. 294, 464 A.2d 581 (1983), *aff'd on other grounds*, 504 Pa. 528, 475 A.2d 1291 (1984) is misplaced. In *Heller*, we held that the statute at issue therein, which purported to regulate the fees of plaintiffs' attorneys in medical malpractice actions was unconstitutional. However, Rule 1.5(c) with its provisions that explicitly contemplates that other laws may govern contingent fees was not in effect at the time. Rather, the Code of Professional Responsibility contained the operative rules governing attorney conduct at the time of the *Heller* decision. This Court in *Heller* did not reference any section of the Code of Professional Responsibility which parallels Rule 1.5(c) providing that "other law" may also govern fees of attorneys, and thus, *Heller* which did not address the issue of whether statutory provisions governing contingent fees is irreconcilable with Rule 1.5(c) is not controlling here.[3] Thus, Petitioners have not met their burden to prove the Lobbying Act supplants the Supreme Court's rules governing the ethical conduct of attorneys.

Next Petitioners take issue with Section 1305(c) of the Lobbying Act which requires that a "registrant [i.e., a registered lobbyist or registered principal] shall retain all documents reasonably necessary to substantiate the reports to be made under this section for four years from the date of filing the subject report. . . . [which] shall be made available for inspection" upon request by the Attorney General or the State Ethics Commission. The reports which Section 1305(c) refers to are explained in Section 1305(b). These reports require that a principal in the first instance and a lobbyist, if the principal fails to do so, file quarterly reports listing the names of all lobbyists by whom the lobbying is done, and the general subject matter being lob-

---

**3.** Neither do I find Petitioners' reliance on *Lloyd v. Fishinger*, 529 Pa. 513, 605 A.2d 1193 (1992) controlling. That decision was a 3–3 split decision which does not constitute mandatory precedent. *Commonwealth v. Silverman*, 442 Pa. 211, 275 A.2d 308 (1971). Moreover, although the Superior Court held in *Lloyd v. Fishinger*, 380 Pa.Super. 507, 552 A.2d 303 (1989), *aff'd by an equally divided court*, 529 Pa. 513, 605 A.2d 1193 (1992) that the legislature's statute regarding contingent fees was unconstitutional, I note that the suit therein was initiated at a time when the Code

of Professional Responsibility was in effect and not the current RPC. Although the decision of the Superior Court came down at a time when the RPC was in effect, the Superior Court did not reference Rule 1.5(c) in its decision. Thus, the Superior Court did not address the issue which is dispositive here. Moreover, I note that this court is not bound by Superior Court precedent. *Wertz v. Chapman Township*, 709 A.2d 428, 433 n. 8 (Pa. Cmwlth.1998), *aff'd*, 559 Pa. 630, 741 A.2d 1272 (1999).

bied plus a single aggregate good faith estimate of the total amount spent for personnel and office expenses related to lobbying plus the names and positions and each occurrence when a State official or employee receives from a principal or lobbyist anything of value. *See generally* Section 1305(b). Furthermore, a lobbyist must sign the report which was prepared by a principal attesting to the validity of the report to the best of the lobbyist's knowledge. Section 1305(b)(4). A lobbyist shall submit a separate report if the lobbyist engaged in lobbying activities which were not contained in the reports filed by the principal. Section 1305(b)(6).

The Petitioners allege that "[g]iven that these reports require the attorney lobbyist to disclose the identity of the client, expense reports, and the 'general subject matter or issue being lobbied'...the documents that an attorney can be compelled to disclose include all of the substantive communications between attorney and client concerning the subject matter being lobbied." Petrs. Main Brief at p. 20. Petitioners allege that the requirement to keep such records as may be necessary to support the reports violate Rule 1.6 of the RPC which provides that a "lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures which are impliedly authorized in order to carry out the representation...." Petitioners allege that the attorney client privilege is violated by the Lobbying Act.

However, Petitioners fail to take cognizance of the fact that the administrative rules which interpret the Lobbying Act specifically provide that "the following need not be reported: ... (iii) The specific contents of any communication or the identity of those with whom the communications take place. (iv) The contents of privileged communications, such as those between attorney and client or doctor and patient." 51 Pa.Code § 35.1(g)(iii-iv).[4] Moreover, the Lobbying Act permits lobbyists to maintain their records of lobbying separate from records of their other professional activities. 51 Pa.Code § 35.2(b). Thus, the Lobbying Act does not require Petitioners to break the attorney-client privilege nor does it necessarily conflict with Rule 1.6 of the RPC. To the extent that Rule 1.6 requires that a lawyer keep all information regarding the representation of a client confidential, such rule permits disclosures which are impliedly authorized in order to carry out the representation. In situations where a client is retaining an attorney to act as a lobbyist, given the Lobbyist Act, the client must be impliedly authorizing disclosure of that information and only that information which is necessary to comply with the Lobbyist Act but only to the extent that such does not violate the attorney client privilege. Moreover the Comment to RPC 1.6 provides that a "lawyer may not disclose such information [relating to representation of a client] except as authorized or required by the Rules of Professional Conduct **or other law.**" (emphasis added). Here the Lobbying Act is such other law requiring the limited disclosure of some information relating to the representation of a client. Furthermore, Rule 1.6(c) of the RPC specifically provides that a

> lawyer may reveal such information [relating to the representation of a client] to the extent that the lawyer reasonably believes necessary:
>
> . . .

---

**4.** Petitioners question whether resort may be had to administrative rules for the resolution of constitutional questions regarding a statute. See Petrs. Main Brief at p. 20. ("[w]ithout citing any authority for the proposition that constitutional infirmities can be corrected by administrative rulemaking..."). It is well settled that resort may be had to administrative interpretations of statutes in order to resolve questions as to the meaning of statutory provisions to determine whether the statute violates the constitution. *Stephens v. Pennsylvania State Bd. of Nursing,* 657 A.2d 71, 76 (Pa.Cmwlth.1995); *Pennsylvania Medical Society v. Foster,* 154 Pa.Cmwlth. 562, 624 A.2d 274 (1993).

(2) to prevent or rectify the consequences of a client's criminal or fraudulent act in the commission of which the lawyer's services are being or had been used.

The Lobbying Act requires a principal to disclose his employment of a lobbyist and the amounts paid for the lobbyist, and in the event that the principal fails to do so, the lobbyist is required to do so. To the extent that the principal's failure to comply with the Lobbying Act is fraudulent or criminal, Rule 1.6(c) permits the lawyer-lobbyist to reveal that which the Lobbying Act requires. The Petitioners' attack specifically focuses on the requirement of Section 1305(c) to keep records which could substantiate the reports required to be made by the Lobbying Act. The documents necessary to substantiate the reports required seem to be composed of billing statements and invoices. Thus, disclosure of such would not violate the attorney client privilege and does not necessarily conflict with Rule 1.6 of the RPC. *See Leach v. Quality Health Services,* 162 F.R.D. 499 (E.D.Pa.1995)(lawyers' billing records are not generally within the attorney client privilege); *Mauch v. Commissioner of Internal Revenue,* 113 F.2d 555 (3d Cir.1940)(identity of client of an attorney is not privileged); *United States v. Grand Jury Investigation,* 401 F.Supp.

361 (W.D.Pa.1975)(same). To the extent that there is any question regarding whether a particular document is required to be produced and whether it falls within the attorney client privilege, the Lobbying Act does not bar the assertion of the privilege and thus the question may be litigated.[5] Again, because Petitioners fail to show that the Lobbying Act and the Rules of Professional Conduct are irreconcilable, this issue does not provide a basis upon which to declare the Lobbying Act unconstitutional.[6]

Notwithstanding the fact that Petitioners have utterly failed to carry their burden of proving that the Lobbying Act is irreconcilable with the Supreme Court's rules governing attorneys, the Majority declares the Lobbying Act unconstitutional. Because the Majority errs in its logic in doing so, I cannot join the Majority opinion and do, therefore, dissent.

President Judge DOYLE and Judge LEADBETTER join this dissent.

---

**5.** Thus, Petitioners' assertion that "the very existence of a contract or subcontract may be privileged" (Petrs. Main Brief at p. 22), may be litigated and resolved in the normal course and does not serve as a basis to invalidate the Lobbying Act.

**6.** While in their Petition for Review, the Petitioners identify five provisions of the Lobbying Act as being unconstitutional for violating the separation of powers, in their motion for summary judgment and main brief they only argue the three issues I address above. Accordingly, the other two issues are waived. The other two issues involved 65 Pa.C.S. § 1310(a) requiring that lobbyists pay a biennial filing fee of $100 to the commission and 65 Pa.C.S. § 1307(b) prohibiting lobbyists from serving as an officer for a political candidate's political committee or a candidate's political action committee.